## A09A0539. ROGERS v. THE STATE.

(681 SE2d 693)

SMITH, Presiding Judge.

Greg Rogers appeals from his convictions for possession of methamphetamine with intent to distribute, two counts of selling methamphetamine, and four counts of using a communication device to commit or facilitate the commission of a designated felony under OCGA § 16-13-32.3.[1] Rogers raises nine enumerations of error. Because Rogers correctly asserts that the State failed to prove venue with regard to three of his convictions for violating OCGA § 16-13-32.3, we must reverse those convictions.[2] We must also reverse his conviction for selling methamphetamine on September 29, 2003, based upon an error in the trial court's recharge to the jury.[3] His remaining convictions are affirmed for the reasons set forth below.[4]

The record shows that the jury convicted Rogers for selling methamphetamine on September 25, 2003 (Count 2), selling methamphetamine on September 29, 2003 (Count 3), possessing methamphetamine with intent to distribute on September 25, 2003 (Count 4), and using a communication facility in violation of OCGA § 16-13-32.3 on September 23, 2003 (Count 5), September 24, 2003 (Count 6), September 25, 2003 (Count 7), and September 29, 2003 (Count 8).[5] Only the evidence related to these convictions will be recounted below.

A confidential informant testified that in a meeting with Agent Bruno, a law enforcement officer assigned to a multi-jurisdiction drug task force,[6] she agreed to work on a case against Rogers, whom she knew from high school. Shortly before agreeing to work on this case, the informant had sexual relations with Rogers, and he had provided her with methamphetamine "at his cost."

On September 23, 2003, the informant discussed arrangements to "pick up dope" in telephone calls with Rogers and his friend Brandon McDonald.[7] The informant testified that she dropped off money for the drugs at McDonald's home and picked up the methamphetamine in a Save Rite parking lot the next day. The

---

[1] The trial court merged all of the communication counts into one for purposes of sentencing.

[2] Counts 5, 6 and 7.

[3] Count 3.

[4] Counts 2, 4 and 8.

[5] The jury found Rogers not guilty of selling methamphetamine on September 24, 2003 (Count 1).

[6] The officers worked in law enforcement agencies from three counties (Rockdale, Walton, and Newton).

[7] Many of the calls between the informant and Rogers or McDonald were made with a two-way radio.

informant testified that she talked on the telephone with Rogers on September 24, 2003 to make arrangements to pick up the methamphetamine she had paid for the day before.

The State presented evidence that McDonald lived at 702 Emory Street, approximately five minutes away from Rogers. Bruno testified that the events relating to the methamphetamine sale on September 23 and 24, 2003, took place in Newton County. There is no information in the record about the location of the confidential informant during these phone calls. There is some evidence that Rogers and McDonald were "en route from Conyers [Rockdale County]" and on their way to meet the informant "at Save Rite" during the telephone call on September 24, 2003.

On September 25, 2003, the informant went to Rogers's home to bring him $205 for the purchase of methamphetamine. The informant testified that Rogers gave her some methamphetamine "to hold [her] over until he got the dope" and promised to get it to her "that same night." In a later telephone conversation on September 25, 2003, Rogers explained to the informant that "he was going to go through another source to pick up the dope." In a second phone call on September 25, Rogers told the informant he was driving from "where he picks the dope up" in Cobb County. She then met Rogers at the post office in Oxford (Newton County) and picked up methamphetamine that had been packaged in two separate bags.

The informant testified that Rogers lived with his parents "at Stone Leigh" in Covington. Bruno testified that the incidents relating to the sale on September 25, 2003, took place in Newton County. There is no other information in the record about the location of Rogers and the confidential informant during their phone calls on September 25, 2003.

On September 29, 2003, the informant spoke with Rogers on the telephone and threatened to "put a bullet between [her] eyes" if she ended "up being the bust woman." In the evening on September 29, she took money to McDonald's house to pay for methamphetamine that would later be delivered by Rogers. When Rogers's car broke down, he called the informant to tell her that McDonald would be delivering the drugs to her at a Save Rite parking lot in Covington. McDonald testified that he and Rogers "drove back to Newton County and met [the informant] at this Save Rite." The informant testified that she received the drugs around "1:00 or 2:00 the next morning," which would have been September 30, 2003.

At one point in Bruno's testimony, however, he asserted that he searched and debriefed the informant after the "purchase on the 29th" and that he received the methamphetamine from the informant "on the 29th." Finally, Bruno testified that the incidents relating to this sale took place in Newton County.

McDonald and Rogers were arrested and taken to the Newton County sheriff's office on September 30, 2003. In a recorded interview, Rogers admitted that he had obtained drugs for the informant and others from his source in Cobb County for approximately two months before his arrest.

1. Rogers contends that he was entitled to a directed verdict on the State's allegation that he sold methamphetamine on September 29, 2003 (Count 3). Rogers argues that because the State alleged in the indictment that "the date of the offense [was] a material element of this indictment," it was required to prove that the sale was completed on September 29, 2003. Rogers asserts that testimony showing that the drugs were delivered around 1:00 or 2:00 a.m. on September 30 mandates the conclusion that the State failed to prove that the crime was completed on the date alleged in the indictment. We disagree because Bruno's testimony provided some evidence from which the jury could conclude that the sale was completed on September 29, 2003, as alleged in the indictment. Specifically, he testified that the purchase took place and he received the methamphetamine from the informant on September 29, 2003.

2. Rogers argues that his conviction for possessing methamphetamine with intent to distribute on September 25, 2003 (Count 4), should have merged with his conviction for the sale of methamphetamine on September 25, 2003 (Count 2). The evidence, however, shows that each conviction related to different methamphetamine and that Rogers did not possess both amounts simultaneously. Consequently, the trial court did not err by denying Rogers's request to merge the two offenses. Compare *Goldsby v. State*, 273 Ga. App. 523, 529-530 (6) (615 SE2d 592) (2005) (convictions for manufacturing and trafficking in methamphetamine merged for purposes of sentencing when one quantity of methamphetamine used to prove both crimes).

3. Rogers contends that he is entitled to a new trial because the State failed to prove venue.

(a) Because the State presented evidence that all of the sales took place in Newton County, we find no merit in this contention with regard to Count 2 (sale of methamphetamine on September 24, 2003) and Count 3 (sale of methamphetamine on September 29, 2003).

(b) With regard to the possession with intent to distribute charge, the record shows that the State charged Rogers for possession with intent to distribute based upon the small, separate amount of methamphetamine he gave to the informant at his home on September 25, 2003, "to hold [her] over." The State presented sufficient evidence of venue with regard to this conviction based upon the testimony that Rogers lived in Covington. We may take judicial notice that the city of Covington is wholly located within

YALE LAW LIBRARY

Newton County, the county in which Rogers was tried. *Hubbard v. State*, 208 Ga. 472, 474 (3) (67 SE2d 562) (1951); *Gilmer v. State*, 234 Ga. App. 309, 310 (1) (506 SE2d 452) (1998).

(c) With regard to Rogers's convictions for using the telephone to facilitate the commission of a felony (OCGA § 16-13-32.3), the record contains no evidence about the location of the informant during the telephone calls on September 23, 24, and 25, 2003. But with regard to the telephone call on September 29, 2003, the audiotape of the conversation between Rogers and the informant provides some evidence that the informant was in Covington during the phone call.

OCGA § 16-13-32.3 (a) provides that "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under this chapter." The General Assembly defined "communication facility" to include a telephone or radio. Id.

We have previously held that "[b]ecause the provisions of 21 USC § 843 (b)[8] are substantially the same as the provisions of OCGA § 16-13-32.3, U. S. Circuit Court cases construing the Federal law are instructive." *Hunt v. State*, 196 Ga. App. 694, 695 (3) (396 SE2d 802) (1990). Federal courts have held that an offense under 21 USC § 843 (b) "is 'committed' for venue purposes both in the district where the call was made and in the district where the call was received." *United States v. Barnes*, 681 F2d 717, 724 (11th Cir. 1982); *United States v. Stewart*, 878 F2d 256, 258 (8th Cir. 1989).

The State submitted sufficient proof of venue with regard to the September 29, 2003, phone call based upon the evidence that the informant was located in Covington during the call. See *Hubbard*, supra, 208 Ga. at 474 (3); *Gilmer*, supra, 234 Ga. App. at 310 (1). With regard to the September 23, 24, and 25, 2003, phone calls, however, the State submitted no proof that the informant or Rogers was in Newton County during the calls and therefore failed to establish venue.

The State asserts that we should apply OCGA § 17-2-2 (e) to conclude that venue existed in Newton County for the phone calls made on September 24 and 25, 2003, while Rogers was traveling from Cobb or Rockdale County to deliver the drugs in Newton County. This Code section provides that

[i]f a crime is committed upon any . . . vehicle . . . traveling

---

[8] This Code section provides that "[i]t shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this title or title III." 21 USC § 843 (b).

within this state and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the . . . vehicle . . . has traveled.

We cannot apply this Code section to the facts before us, however, because the State could have readily determined where the crime was committed. The record shows that members of the drug task force knew the location of the informant during her phone calls with Rogers.

Based upon the above, we must conclude that the State failed to prove venue in Newton County for Counts 5, 6, and 7. See *Maldonado v. State*, 284 Ga. App. 26, 27-28 (1) (643 SE2d 316) (2007). We therefore reverse Rogers's convictions on those counts.[9]

4. Rogers contends he is entitled to a new trial because the trial court erred in its recharge to the jury on the offense of sale of drugs. We agree. "When the jury requests the court to recharge them on any point, it is the court's duty to do so." (Citations omitted.) *Edwards v. State*, 233 Ga. 625, 626 (2) (212 SE2d 802) (1975).

The record shows that the trial court properly charged the jury that "[a] sale of drugs is complete when the seller delivers the drugs to the buyer" and that "the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt." See *Ledesma v. State*, 251 Ga. 885 (1) (a) (311 SE2d 427) (1984) (when "the indictment specifically alleges the date of the offense is material, the accused may be convicted only if the State's proof corresponds to the date alleged [cits.]"); *Robinson v. State*, 164 Ga. App. 652, 653 (1) (297 SE2d 751) (1982) (sale of drugs complete upon delivery).

During its deliberations, the jury asked the trial court the following questions, "What constitutes the completion of the sale?" and also "[A]s defined by law, what is the sale of meth from beginning to end?" The following colloquy then occurred in the presence of the jurors:

> THE COURT: Okay, the jurors are back in. You have sent me out two questions.
>
> You are the fact determiners in this case. Is that clear to you? You make the decisions after I have instructed you on

---

[9] We note that the State's failure to prove venue will "not bar retrial, because evidence of venue does not go to the guilt or innocence of the accused, and hence it does not invoke double jeopardy concerns." (Citations, punctuation and footnote omitted.) *Jones v. State*, 272 Ga. 900, 904 (4) (537 SE2d 80) (2000).

the law on these two points. You have the power. Do you understand that? That's the best I can answer your questions.

Do y'all need any further instructions from me?

Yes, sir?

THE FOREPERSON: Sir, if it is possible, could you please reread as the law states and as you stated to us first?

THE COURT: The law — that's what we've been out here discussing.

THE FOREPERSON: Okay.

THE COURT: There is a question of the defense on when the sale in completed. And that is true on the law that I read you. What the law does not talk about is when the sale starts. That's what you are to decide. If you find that a sale took place on the date in the indictment, then, that's your finding. If you find that the sale did not take place on the date in the indictment, that's your finding. You make the findings.

THE FOREPERSON: I think specifically we were looking for a definition as stated by the law of what sale is. How — what — not necessarily what constitutes a sale, but time-line wise, what constitutes a sale.

THE COURT: I can read you some dicta out of a case. Dicta is things that are not the holding, but is judged as just talking in a case.

Don't know whether I ought to do that with you. Because this is an issue, in my estimation, of first impression in the State of Georgia. First time it's come up. And I don't find — I don't know what I can tell you, in other words.

The fact situation out of which some of the law I read you . . . is different from our fact situation. That's what we have been discussing out here.

So, I am going to leave it up to y'all. Is that clear?

THE FOREPERSON: Yes, sir.

THE COURT: You make the decisions and you render your verdict. That will be all.

Let me stop you right there before I let you go out.

When I made the statement out here that one side had given me a request of charge, that was an appropriate request of charge. Y'all can't take that as meaning that that is any lesser law. Because one side gave it to me, then the other side gave it to me. I should have just said they gave it

to me, because we have all been wrestling with this issue out here.

. . .

So I will let you go on back.

After the jury left the courtroom, Rogers's counsel "object[ed] to the way it was answered, you only answered question number two. I thought question number one dealt with the original charge." The court responded:

I am not comfortable with the original charge. That's what I am saying. I'm not sure that's a correct statement as applied to this case under the law.

So I have kind of danced around it. I told them that I read the instruction as you said. But I said you have given your instructions, or whatever I said, it's going to be in the transcript.

But I think I referred back to the instructions and then told them they were the factfinders and they make the decisions.

I am not to emphasize it because again, I just don't even think that myself is a correct statement of law, given the circumstances of our case.

This record demonstrates that both the trial court and the jury were confused about the law on a critical issue in the case with regard to Count 3: Did the State prove that Rogers sold methamphetamine on the date alleged in the indictment (September 29, 2003)? Because there was evidence in the record from which the jury might have concluded that the State failed to prove a completed sale on the date alleged in the indictment, the trial court erred by failing to recharge the jury that the State was required to prove that the sale was completed on the material date alleged in the indictment. See *Hooper v. State*, 223 Ga. App. 515, 518 (4) (478 SE2d 606) (1996) (reversing criminal conviction when State proved that only one phone call occurred on the material date alleged in the indictment and elements of crime required proof of repeated telephone calls).

We cannot say that the trial court's failure to recharge was harmless with regard to Count 3 and must therefore reverse Rogers's conviction on that count. *Blandburg v. State*, 209 Ga. App. 752, 755 (2) (434 SE2d 510) (1993). The trial court's recharge error was harmless with regard to Rogers's remaining convictions because there was no issue on these counts as to whether a sale was completed on the date alleged in the indictment. *Murray v. State*, 180

Ga. App. 493, 495 (1) (349 SE2d 490) (1986).

5. Rogers argues that he is entitled to a new trial because he did not receive before trial a crime lab report for the methamphetamine sold on September 29, 2003. We disagree.

OCGA § 17-16-4 (a) (4) provides that the State shall "permit the defendant . . . to inspect and copy or photograph a report . . . of scientific tests or experiments." This language "does not require service upon the defendant, but only making the reports of such tests available for inspection and copying." *Lawson v. State*, 224 Ga. App. 645, 648 (3) (c) (481 SE2d 856) (1997). The record before us includes a certificate of service showing that the State served defense counsel with "GBI Crime Lab Results" in "Case No. 2003-1093248." The certificate of service also included the following handwritten note "[p]lease feel free to inspect State's file or schedule appt. to see drugs."

During testimony by a forensic chemist employed by the GBI, defense counsel claimed that he did not receive the lab results for the suspected methamphetamine last purchased by the informant, but instead only the report for the methamphetamine obtained by the informant on the three other occasions alleged in the indictment and at trial. Based on this discovery failure, defense counsel asked that the trial court preclude the witness from testifying about the results of the test.

The trial court ruled that defense counsel would be given a copy of the omitted report and an opportunity to interview the GBI expert before continuing with her testimony. After interviewing the expert, defense counsel advised the court that he spoke with the expert over the break and "gleaned sufficient information from her." Based upon defense counsel's failure to obtain an independent analysis of the drugs for which he did obtain a laboratory report, the trial court ruled that Rogers suffered no harm from the State's failure to include the last report with the others it served upon defense counsel.

Based upon this record, we cannot conclude that the State violated OCGA § 17-16-4 (a) (4) because it had no obligation to serve a copy of the lab report. *Lawson*, supra, 224 Ga. App. at 648 (3) (c); see also *Smith v. State*, 257 Ga. App. 88, 90 (3) (570 SE2d 400) (2002), overruled on other grounds, *Patterson v. State*, 278 Ga. App. 168, 170 (628 SE2d 618) (2006). Moreover, OCGA § 17-16-6 authorizes a trial court to exclude evidence only upon "a showing of prejudice to the defense and bad faith by the State." (Citation omitted.) *Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996). See also *White v. State*, 181 Ga. App. 170, 171 (351 SE2d 536) (1986) (State's innocent mistake in sending wrong scientific report did not warrant exclusion of report). The trial court, therefore, did not err by

refusing to exclude the evidence based upon Rogers's failure to prove bad faith on the part of the State and prejudice to his defense.

6. Rogers contends that the trial court erred "by allowing the State to elicit testimony from witnesses in order to bolster the contents of audiotapes which were played for the jury." We find no merit in this contention because trial counsel made no objection based upon bolstering below. "[W]here an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court." (Citation and punctuation omitted.) *Tyler v. State*, 147 Ga. App. 394, 395 (2) (249 SE2d 109) (1978). See also *McGee v. State*, 205 Ga. App. 722, 729 (12) (423 SE2d 666) (1992) (bolstering objection waived).

Moreover, to the extent the objections raised below somehow encompass bolstering, a review of the record citations provided by Rogers demonstrates that no improper bolstering occurred. The complained-of testimony merely explained events occurring on the tapes. See *Ross v. State*, 262 Ga. App. 323, 324-325 (1) (585 SE2d 666) (2003) (no improper bolstering in testimony that offered no opinion and merely pointed out factual evidence which supported the contentions of the State); *Atwell v. State*, 293 Ga. App. 586, 589-590 (2) (b) (667 SE2d 442) (2008) ("[i]mproper bolstering refers to character evidence intended to show a witness's veracity, that is, his tendency to tell the truth") (punctuation and footnote omitted).

7. Roger contends the trial court erred by asking the jury the following question during voir dire: "Is your mind perfectly impartial between the State and the accused?" According to Rogers, the entire jury panel should have been struck when they failed to answer that they were biased in favor of the defendant based upon the presumption of innocence. We find no merit in this contention, and it has already been rejected by the Georgia Supreme Court. *Patel v. State*, 278 Ga. 403, 408 (7) (603 SE2d 237) (2004).

8. In his remaining enumerations of error, Rogers argues that he is entitled to a new trial because (1) the trial court admitted his taped threat to kill the informant if she turned out to be the "bust woman" and (2) the trial court rejected his offer to stipulate that his voice was on the tapes in order to prevent Bruno from testifying that he knew Rogers's voice because Rogers was a former police officer with whom Bruno worked. Even if these arguments had merit, the evidence against Rogers was overwhelming. An appellant must show harm as well as error to obtain a new trial. *Banks v. State*, 270 Ga. App. 221, 223-224 (5) (606 SE2d 34) (2004). In this case, the testimony of the informant, the audiotapes, and Rogers's own confession provide overwhelming evidence of his guilt.

Based on the above, Rogers's convictions for selling methamphetamine on September 25, 2003, possession of methamphetamine

with intent to distribute, and using a communication device in violation of OCGA § 16-13-32.3 on September 29, 2003 are affirmed. Rogers's convictions for the sale of cocaine on September 29, 2003 and the three counts of using a communication facility on September 23, 24, and 25, 2003 are reversed.

*Judgment affirmed in part and reversed in part. Phipps and Bernes, JJ., concur.*

DECIDED JULY 10, 2009.

*Teresa L. Smith*, for appellant.

*W. Kendall Wynne, Jr., District Attorney, Layla H. Zon, Assistant District Attorney*, for appellee.