## A11A0212. SMITH v. THE STATE.
### (714 SE2d 51)

DOYLE, Judge.

Brenton James Smith was charged with child molestation[1] and statutory rape.[2] The jury found him guilty of child molestation and not guilty of statutory rape. Smith appeals the denial of his motion for new trial, arguing that the trial court erred in its charge to the jury. We agree, and therefore reverse.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. In addition, we determine only the legal sufficiency of the evidence adduced at trial and do not weigh the evidence or assess the credibility of the witnesses.[3]

So viewed, the facts relevant to this appeal show that when the victim, A. S., was 12 years old, her mother sent her on weekends to stay with a family friend, "Mac" Caldwell. Caldwell told A. S. that

---

[13] OCGA § 16-13-49 (e) (1) (E) (ii) (III).

[1] OCGA § 16-6-4 (a).

[2] OCGA § 16-6-3 (a).

[3] (Footnotes omitted.) *Disabato v. State*, 303 Ga. App. 68 (692 SE2d 701) (2010). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

she could be a model, and he began photographing her. Initially, A. S. was clothed for the photographs, but Caldwell then provided her with alcohol and took what the victim described as "promiscuous" photographs, including one of her vagina. Caldwell then uploaded a photograph of A. S. onto an adult website, listing her name as a pseudonym.[4] Caldwell then communicated with men who accessed the website, and he gave them the number for A. S.'s cell phone, which he had provided for her. According to A. S., she received phone calls from "lots" of men.

Smith began communicating with the person he believed to be A. S. via instant messenger and then through e-mail, including exchanging photographs of Smith and A. S. and Smith's penis; it appears, however, that Smith was actually communicating with Caldwell, who was holding himself out as A. S.[5] Caldwell then gave A. S. Smith's phone number, and she called him. A. S. and Smith had multiple telephone conversations, and they eventually set up a meeting at Caldwell's house.

Smith arrived at the house, and A. S. met him outside and then took him into the furnished basement. According to A. S., she "had sexual intercourse" with Smith on the couch, and he left shortly thereafter.[6] A. S. testified that she called Smith afterward because "[she] liked him," but "he [made] up excuses to not see [her]."

At trial, Smith admitted that he exchanged e-mails with someone he believed to be A. S., he spoke on the phone to A. S., and he met her at a house in Gwinnett County for the purpose of having sex with her. According to Smith, A. S. was "shorter than she had communicated that she was to [him]. And she had a lot more acne. Plus her hair was not that black color . . . [and] it was shorter. . . ." A. S. was drinking a bottle of Smirnoff Ice, and she appeared to be intoxicated, slurring her words. The two then "talked about having sex, what it would lead to. She then proceeded to talk about some odder sexual things that [they] had not previously discussed." While they were talking, A. S.'s phone rang, and she immediately went upstairs to take the call, leaving Smith in the basement. While A. S. was gone, Smith began to worry that the situation was "weird," realizing that he had no idea who was upstairs, and concluded that he was not in control of the situation, which he described as "unpredictable." According to Smith, when A. S. returned to the basement, she asked

---

[4] To maintain the victim's privacy, we have omitted her pseudonym and refer to her only by her initials.

[5] There is no evidence that A. S. received or reviewed any of the e-mails or instant messages, with the exception of a single photograph of Smith that Caldwell showed to A. S.

[6] Caldwell had placed many cameras in the basement.

him if he wanted to kiss her. Smith then told her,

> I'm sorry. Between you taking phone calls in private and discussing this other stuff that we had never discussed before, I don't think I can go through with this. It's not what I thought. It's not what I envisioned when I started the contact. When I thought about it — it's not what I thought. I don't want to be here.

Smith testified that A. S. "was upset. She asked, is this because I'm not pretty? Is it a personal reason, along those lines, were her questioning [sic]. And . . . I said, it's not because I don't find you attractive, it's not because of any of that. It's a weird situation[,] and I'm not comfortable[,] and I just want to go home." Smith stated that he then left the house without having sex with A. S. A. S. subsequently called Smith several times, encouraging him to "try it again," offering that they didn't have to "do the odd stuff," but he declined. A. S. eventually stopped calling Smith after he asked her not to contact him anymore.

Thereafter, the FBI began investigating Caldwell after a co-worker reported seeing possible child pornography on his work computer.[7] During the investigation, the authorities identified A. S. as a victim of child pornography, and they interviewed her, during which time she stated that she had engaged in sexual relations with "Brent" at Caldwell's home. After further investigation, including seizure of Caldwell's computer, the FBI identified Smith as a suspect, and A. S. identified him from a photograph during a subsequent interview.[8]

1. Smith argues that the trial court's jury charges and subsequent response to jury questions violated his due process rights because they allowed him to be convicted of child molestation in a manner not alleged in the indictment. We agree.

The indictment alleged that Smith committed child molestation by "unlawfully perform[ing] an immoral and indecent act upon the person of [A. S.], a child under the age of sixteen (16) years, by placing his penis in her vagina with intent to arouse and satisfy the sexual desires of said child and said accused. . . ." The trial court gave the jury the following instruction as to the child molestation offense: "[a] person commits the offense of child molestation when

---

[7] Caldwell was ultimately convicted in federal court of manufacturing child pornography. In a related action, another individual, George Brian Disabato, was convicted of committing aggravated sexual battery, aggravated child molestation, and child molestation of A. S. at Caldwell's house; Disabato's conviction was affirmed on appeal. See *Disabato*, 303 Ga. App. at 68.

[8] A redacted copy of the FBI's interview of A. S. was shown to the jury.

that person does an immoral *and* indecent act to a child less than 16 years of age with the intent to arouse and satisfy the sexual desires of the person *and* the child."[9] During deliberations, the jury sent a note to the trial court asking, "Can a sexual conversation alone constitute an indecent act?" and "What is the State's standard definition of immoral and indecent act?" Following discussion with counsel, the trial court instructed the jurors: "You'll have to refer to the charge as a whole and the indictment and the evidence."[10]

On appeal, Smith argues that the jury charge and the response to the question led the jury to believe that they could convict him of child molestation based on a conversation alone, without concluding that he placed his penis in her vagina as alleged in the indictment. Smith maintains that based on the jury's questions, coupled with the fact that it found him not guilty of statutory rape, it is probable that the jury found him guilty of committing child molestation in a manner not charged in the indictment.[11]

> A criminal defendant's right to due process may be endangered when . . . an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.[12]

While instructing the jury that a crime can be committed in

---

[9] (Emphasis supplied.) OCGA § 16-6-4 (a) provides that "[a] person commits the offense of child molestation when [he or she does] any immoral *or* indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child *or* the person." (Emphasis supplied.) The pattern jury charge on child molestation tracks the Code section. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.34.10 (4th ed. 2007).

[10] It appears from the record that the trial court simply wrote its response to the jury's questions on the note, as opposed to verbally instructing the jury. Although copies of other notes from the jury were included in the record, the note containing the question at issue and the trial court's response thereto is not in the appellate record. However, the colloquy between the trial court and counsel indicates the trial court's specific response to the questions, and neither party contests the substance of that response on appeal.

[11] Although Smith failed to object to the jury instructions, including the response to the jury's questions, "the jury charge constitutes plain error which affects substantial rights of the defendant." (Citation and punctuation omitted.) *Milner v. State,* 297 Ga. App. 859, 859, n. 1 (678 SE2d 563) (2009). We note that Smith also alleges that trial counsel's failure to so object constituted ineffective assistance of counsel.

[12] (Citations omitted.) *Harwell v. State,* 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

a manner different from that charged in the indictment can constitute reversible error, a reversal is not mandated where . . . the charge as a whole limits the jury's consideration to the specific manner of committing the crime alleged in the indictment.[13]

Here, the trial court read the indictment to the jury, instructed the jury that the State had the burden of proving every material violation of the indictment beyond a reasonable doubt, and sent the indictment and a written copy of the jury instructions out with the jury during deliberations. "The court, however, did not give a limiting instruction to ensure that the jury would find [Smith] guilty of [child molestation] in the specific manner charged in the indictment. Nor did the court instruct the jury not to consider [child molestation] as having occurred in another manner."[14] When the jury expressed its confusion by asking whether sexual conversations could constitute an immoral or indecent act, the trial court should have instructed the jury to limit its consideration to determining whether Smith was guilty of committing child molestation *in the specific manner alleged in the indictment only*. Instead, the trial court aggravated the confusion by simply referring the jury to the charge and the indictment, with no limiting or remedial instruction.

The evidence presented at trial included A. S.'s testimony that Smith penetrated her vagina with his penis, *and* Smith's own testimony that he engaged only in sexual *conversations* with the victim. Under the circumstances of this case, including the jury's verdict finding Smith not guilty of statutory rape,[15] we conclude that "there is a reasonable possibility that the jury convicted the defendant of the commission of a crime in a manner not charged in the indictment."[16] Smith is therefore entitled to a new trial on the charge of child molestation.

2. In light of our holding in Division 1, we need not address

---

[13] (Punctuation omitted.) *Machado v. State*, 300 Ga. App. 459, 462 (5) (685 SE2d 428) (2009).

[14] (Citation omitted.) *Milner*, 297 Ga. App. at 860 (1). See also *Hall v. Wheeling*, 282 Ga. 86, 87 (1) (646 SE2d 236) (2007); *Chapman v. State*, 273 Ga. 865, 868-869 (2) (548 SE2d 278) (2001); *Hopkins v. State*, 255 Ga. App. 202, 204-206 (2) (564 SE2d 805) (2002).

[15] We recognize that our Supreme Court has abolished the inconsistent verdict rule in criminal cases. See *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). Smith, however, does not argue that the verdict was inconsistent, but instead points out that the not guilty verdict on the statutory rape charge supports his argument that the trial court's instructions to the jury as to the child molestation charge were erroneous.

[16] (Punctuation omitted.) *Dukes v. State*, 265 Ga. 422, 423 (457 SE2d 556) (1995). See also *Hall*, 282 Ga. at 87 (1); *Chapman*, 273 Ga. at 869 (2); *Craft v. State*, 309 Ga. App. 698, 703 (5) (710 SE2d 891) (2011); *Milner*, 297 Ga. App. at 860 (1); *Hopkins*, 255 Ga. App. at 206 (2); *Walker v. State*, 146 Ga. App. 237, 244 (2) (246 SE2d 206) (1978).

Smith's remaining enumerations.
 *Judgment reversed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 1, 2011 — 

*Kish & Lietz, Paul S. Kish*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney*, for appellee.