A11A1266. ADAMS v. THE STATE.
(718 SE2d 899)

DOYLE, Judge.

Following a jury trial, John Lawrence Adams was convicted of criminal attempt to entice a child for indecent purposes[1] and making a false statement in a matter within the jurisdiction of a sheriff's office.[2] Adams appeals following the denial of his motion for new trial, arguing that the trial court violated OCGA § 17-8-57 and erred when charging the jury. Adams also challenges the sufficiency of the evidence supporting his conviction for criminal attempt to entice a child for indecent purposes. We affirm, for the reasons that follow.

Viewed in favor of the verdict,[3] the record shows that Robyn Still, an investigator with the White County Sheriff's Department, established an undercover online identity as part of an investigation intended to target child predators. Still identified herself under the

---

[1] OCGA §§ 16-6-5 (a); 16-4-1.
[2] OCGA § 16-10-20.
[3] See *Logan v. State*, 309 Ga. App. 95, 95-96 (709 SE2d 302) (2011).

pseudonym "Savannah Patterson," a 14-year-old girl, and she posted a photograph of a 14-year-old child.[4]

On March 9, 2007, Savannah logged into a regional chat room and was contacted by Adams, whose user name was "million_hamster_march," and they began communicating through instant messaging. After Savannah disclosed that she was 14 years old, Adams asked her if she liked older men and sex, and Savannah indicated that she was a virgin. Adams then suggested that they meet, describing various sexual acts that he intended to engage in with Savannah, including vaginal, oral, and anal sex. Adams also used a webcam to depict himself masturbating while he communicated with Savannah, and Still recorded the video, which included shots of Adams's face. At one point, Adams warned Savannah that she should not tell her mother about their conversations and that they needed to "be careful" because he "[did not] want to get in trouble . . . [for b]eing with a minor."

Savannah agreed to meet Adams, but suggested that they meet at the bathrooms at the dam at Unicoi State Park because her house was not listed on a map and was difficult to find. Adams agreed, stating that he would be driving a black Ford truck and would bring condoms.

On the morning of their arranged meeting, Adams was taken into custody on a dock in Unicoi State Park across the lake from the arranged meeting location near the dam. Adams's truck, a black Ford, which did not have a license plate, was in the nearby parking lot.[5] Police found a computer, several cameras, and a receipt upon which someone had handwritten Savannah's name and home address. The police also found condoms in both the truck and Adams's pockets.

Police transported Adams to the police station, where they interviewed him. During his interview, Adams advised Still that he lived in Florida. Adams also gave the following written statement:

> It's been a fant[as]y of mine to have sex with a underaged girl. I know it's wrong[,] and [I] need help with this problem. I was going to meet her in Helen. I need help with this problem. I know [I] need help. I am sorry for what [I]'ve done. I am done with the [I]nternet. Don't want [i]t. I know [it's] wrong. I was wanting this stuff to [h]appen[.] I was scared though. I'm just really sorry and feel terrible about what happened[.]

---

[4] Savannah listed her age as 18, but stated within the comment section of her profile that she was actually 14.

[5] Police also found three license plates in Adams's truck.

Adams was charged with two counts of criminal attempt to commit aggravated child molestation (Counts 1 and 2), criminal attempt to commit child molestation (Count 3), criminal attempt to commit enticing a child for indecent purposes (Count 4), three counts of violating the Computer Pornography and Child Exploitation Act ("CPCEA") (Counts 5, 6, and 7), two counts of making a false statement in a matter within the jurisdiction of a sheriff's office (Counts 8 and 9), use of a license plate to conceal identity (Count 10), and removal of a license plate to conceal identity (Count 11).

The jury found Adams guilty of Counts 4, 5, 6, 7, and 8. The jury was unable to reach a verdict as to Counts 1, 2, or 3, and the trial court declared a mistrial as to those charges. The State entered a nolle prosequi as to Count 9, and the jury found Adams not guilty on Counts 10 and 11. The trial court subsequently entered an order of acquittal as to Counts 1, 2, 3, 9, 10, and 11, and sentenced Adams to confinement for the remaining counts. Adams filed a motion for new trial on several grounds, and the trial court granted the motion as to Counts 5, 6, and 7 based on the State's agreement thereto, but denied the motion as to Counts 4 (criminal attempt to entice a child for indecent purposes) and 8 (making a false statement in a matter within the jurisdiction of a sheriff's office). This appeal followed.

1. Adams argues that the trial court violated OCGA § 17-8-57 in two instances. Pursuant to OCGA § 17-8-57,

> [i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

To constitute a violation of the statute, "the comments must focus on a disputed issue of material fact. The purpose of this limitation, in part, is to prevent the jury from being influenced by any disclosure as to the judge's opinion of a witness's credibility."[6]

Defense counsel did not move for a mistrial or object to either of the trial court's comments that Adams argues were improper. Nevertheless, Adams "is entitled to a new trial if the judge's

---

[6] (Punctuation omitted.) *Ward v. State*, 306 Ga. App. 274, 276 (701 SE2d 900) (2010).

comments violated OCGA § 17-8-57, because such a violation always constitutes plain error as a matter of law."[7]

(a) During voir dire, defense counsel asked the prospective jurors whether they used Facebook. One prospective juror responded that although she did not use Facebook personally, she did register and view her 25-year-old daughter's profile page. The trial court then stated, "The problem is, Tammy, you shouldn't have told him she was 25. You don't look 25."

Adams maintains that part of his defense at trial was that he did not believe Savannah was a minor. Therefore, according to Adams, the trial court's comment to the juror regarding her age constituted a comment on Adams's credibility and his defense, and it influenced the jury's verdict. We disagree. Assuming, arguendo, that the issue of whether Adams believed that Savannah was 14 years old was disputed,[8] the trial court's comment to the juror did not "express or intimate [its] opinion as to what has or has not been proved."[9] Thus, the trial court's comment did not violate OCGA § 17-8-57, and this argument presents no basis for reversal.

(b) Adams also contends that the trial court violated OCGA § 17-8-57 during defense counsel's cross-examination of Still regarding Adams's representation to her that he lived in Florida when he actually lived in Stone Mountain. Defense counsel asserted that Still stated in her warrant for Count 8 that Adams "knowingly and wilfully falsifie[d], conceal[ed] or cover[ed] up by any trick, scheme, or device a material fact, [or] ma[de] a false, fictitious, or fraudulent statement or representation." Counsel then asked Still if Adams's statement that he lived in Florida "was . . . a material fact?" The trial court then asked trial counsel:

> [D]o you want me to charge the jury as to the entirety of that charge or as indicted? Your client is only indicted with one small sliver of such. Your questioning of her lays out the entirety of the statute. I just want to know that because I'm drawing these jury charges here. . . . I can charge them on every possible function and permutation of the law, but all I've charged is what the State has indicted him for, which is that one thing, a false statement in the criminal investigation. I have limited it to that effect so he can't be indicted or convicted for something he may or may not have been charged with.

---

[7] Id. at 276-277. See *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010).

[8] Still was the only trial witness.

[9] OCGA § 17-8-57.

Defense counsel responded that he intended to ask Still "if that was a material fact in the investigation." The Court then stated: "Okay. Then I'm going to enlarge that possibility, if you insist on asking her that, so that the jury can consider what he did."

Adams argues on appeal that the trial court's statement "improperly expressed an opinion as to what had been proved and a disputed issue of fact." Again, we disagree.

"OCGA § 16-10-20 provides three ways in which the crime of giving a false statement may be committed: (1) by falsifying or concealing a material fact; (2) by making a false statement or representation; or (3) by knowingly making or using a false writing."[10] In the indictment, the State charged that Adams "did knowingly and willfully make a false statement," not that he concealed or falsified a material fact. Thus, the trial court was attempting to explain to defense counsel that he was expanding the indictment by asking Still about a separate manner of violating the statute and that if counsel insisted on doing so, the court would enlarge the jury charges and admit any evidence to support that manner of committing the crime.

"The trial court's comments were limited in scope to directing defense counsel and did not involve [Adams's] guilt or innocence."[11] The Supreme Court has held that OCGA § 17-8-57 "does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence."[12] In addition, "remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence."[13]

> Contrary to [Adams's] arguments, the complained of comments by the trial court demonstrate [an] authorized attempt[ ] to control the conduct of the trial and to guide the defense attorney to ensure a fair trial and the orderly administration of justice. The comments were limited in scope, did not involve [Adams's] guilt or innocence, and did not express an opinion on what had or had not been proved."[14]

Thus, the trial court's comments did not violate OCGA § 17-8-57,

---

[10] *Dawkins v. State*, 278 Ga. App. 343, 344-345 (629 SE2d 45) (2006).

[11] (Punctuation omitted.) *Mathis v. State*, 276 Ga. App. 205, 206-207 (622 SE2d 857) (2005).

[12] (Punctuation omitted.) *Rowe v. State*, 266 Ga. 136, 139 (2) (464 SE2d 811) (1996).

[13] (Citation and punctuation omitted.) *Crowe v. State*, 265 Ga. 582, 594 (19) (458 SE2d 799) (1995).

[14] *Mathis*, 276 Ga. App. at 208.

and this argument is without merit.[15]

2. Adams argues that the trial court's jury instructions violated his due process rights because they allowed him to be convicted of criminal attempt to entice a child for an indecent purpose in a manner not alleged in the indictment.

The indictment alleged in Count 4 that Adams

did perform an act which constitutes a substantial step toward the commission of solicitation of Savannah Patterson, someone believed by the accused to be under the age of sixteen years, to Unicoi Park, White County, Georgia, to wit: said accused did engage in a sexually explicit online chat with Savannah Patterson and drove to the arranged meeting place for the purpose of committing *Aggravated Child Molestation*, contrary to the laws of said State, the good order, peace and dignity thereof.[16]

The trial court gave the following jury instruction as to the criminal attempt to entice a child offense:

As to Count 4, I instruct you that a person commits the offense of criminal attempt to commit the offense of enticing a child for indecent purposes when he solicits or entices any child under the age of 16 years to any place whatsoever for the purpose of *child molestation* or indecent acts. A person commits the offense of criminal attempt to commit the offense of enticing a child for indecent purposes when he solicits or entices any child under the age of 16 to any place whatsoever for the purposes of *child molestation* when, with the intent — when he, with the intent to commit child molestation, performs any act — I'm sorry, let me start over again with that. A person commits the offense of criminal attempt to commit the offense of enticing a child for indecent purposes when he solicits or entices any child under the age of 16 to any place whatsoever for the purpose of *child molestation* when he, with the intent to commit *child molestation*, performs any act which constitutes a substantial step towards the commission of said crime.[17]

Adams argues, therefore, that the instruction led the jury to believe that it could convict him of criminal attempt to entice a child

---

[15] See id.

[16] (Emphasis supplied.)

[17] (Emphasis supplied.)

for indecent purposes if he attempted to solicit Savannah with the intent to commit *child molestation*, as opposed to with the intent to commit *aggravated child molestation* as alleged in the indictment.[18]

> A criminal defendant's right to due process may be endangered when . . . an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.[19]

In the instant case, there was evidence to support a conviction based on the unalleged manner of committing the crime.

> While instructing the jury[, however,] that a crime can be committed in a manner different from that charged in the indictment can constitute reversible error, a reversal is not mandated where . . . the charge as a whole limits the jury's consideration to the specific manner of committing the crime alleged in the indictment.[20]

"Here, the trial court read the indictment to the jury, instructed the jury that the [S]tate had the burden of proving every material allegation in the indictment beyond a reasonable doubt[,] and sent the indictment out with the jury during its deliberations."[21] And, after defining the crimes alleged, the trial court instructed the jury that it would be authorized to find Adams guilty if it believed beyond a reasonable doubt that he committed the crimes "as set forth in the indictment."[22] "These instructions cured any complained of problem with the [charge of attempting to entice a child]."[23]

---

[18] We note that the trial court instructed the jury as to child molestation and aggravated child molestation, based on Counts 1, 2, and 3. As indicated, supra, Adams was acquitted of those charges.

[19] (Citations omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

[20] (Punctuation omitted.) *Machado v. State*, 300 Ga. App. 459, 462 (5) (685 SE2d 428) (2009).

[21] Id. at 462-463 (5).

[22] See *Searcy v. State*, 168 Ga. App. 233, 234 (308 SE2d 621) (1983). Compare *Wallin v. State*, 305 Ga. App. 663, 664 (1) (700 SE2d 837) (2010).

[23] See *Machado*, 300 Ga. App. at 463 (5). Compare *Smith v. State*, 310 Ga. App. 418, 422

3. Finally, Adams challenges the sufficiency of the evidence as to his conviction for criminal attempt to entice a child for indecent purposes.

(a) Adams contends that the evidence was insufficient because the State failed to prove that he "drove to the arranged meeting place" as alleged in the indictment. Instead, he argues, the evidence shows that he was arrested across the lake from the meeting place.

> When a defendant challenges the sufficiency of the evidence on appeal, this Court must view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys a presumption of innocence. An appellate court determines evidence sufficiency rather than weighing the evidence or determining witness credibility. The standard is whether, based on the evidence presented, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The review of the sufficiency of the evidence to support venue is no different because venue is an essential element that must be proven beyond a reasonable doubt in every criminal trial.[24]

Here, the State introduced testimony regarding the park, including the location of Adams's arrest and its proximity to the bathrooms, as well as a photograph depicting the scene. Viewed in favor of the verdict, we conclude that there was sufficient evidence to authorize a rational jury to conclude that Adams drove to the arranged meeting place and find him guilty of Count 4.

(b) Adams further argues that the State failed to prove venue. We disagree.

First, Adams contends that venue was not proper because the State failed to prove that the explicit online chat occurred in White County, where he was tried.

> Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed. Venue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. Like every other material allegation in the indictment, venue must be proved by the prosecution be-

---

(1) (714 SE2d 51) (2011).

[24] (Citation and punctuation omitted.) *Melton v. State*, 282 Ga. App. 685, 685-686 (639 SE2d 411) (2006).

yond a reasonable doubt. The [S]tate may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence. On appeal, we view the evidence in the light most favorable to the verdict and determine whether the evidence was sufficient to permit a finding that the crime was committed in the county where the defendant was indicted.[25]

As we have previously held,

[t]he crime of enticing a child for indecent purposes in violation of OCGA § 16-6-5 requires the showing of a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation. A conviction under OCGA § 16-6-5 need not be based upon evidence that an act of indecency or child molestation was accomplished or even attempted. Accordingly, *the crime is complete when the child is enticed with the requisite intent*, regardless of the ultimate site whereat the enticer contemplates that the act of indecency or child molestation is to be perpetrated. Thus, it is immaterial that the evidence showed that appellants actually took the child into a county other than that wherein they were prosecuted. What would be material is whether the evidence showed that, while in the county wherein they were prosecuted, appellants enticed the child with the requisite intent to commit the alleged act of indecency or child molestation at any location.[26]

Thus, venue properly lies in the county wherein Adams attempted to entice Savannah.[27] Based on the allegations of the indictment, venue in this case is not limited to Adams's physical location at the time he used the online service to attempt to entice Savannah. Count 4 of the indictment alleged that Adams:

did perform an act which constitutes a substantial step toward the commission of solicitation of Savannah Patterson, someone believed by the accused to be under the age of

---

[25] (Punctuation omitted.) *Bowen v. State*, 304 Ga. App. 819, 822-823 (1) (b) (697 SE2d 898) (2010).

[26] (Citation and punctuation omitted; emphasis supplied.) *Abreu v. State*, 206 Ga. App. 361, 363 (3) (425 SE2d 331) (1992).

[27] Thus, the State had to prove only that the enticement occurred in White County. Whether Adams drove to White County or was arrested in White County is immaterial to the issue of venue.

sixteen years, to Unicoi Park, White County, Georgia, to wit: *said accused did engage in a sexually explicit online chat* with Savannah Patterson and drove to the arranged meeting place for the purpose of committing Aggravated Child Molestation, contrary to the laws of said State, the good order, peace and dignity thereof.

The crime as alleged focuses on Adams's utilization of an online chat service to entice Savannah. Still testified that she was located in White County when she posed as Savannah to communicate with Adams on the Internet. Based on the nature of the online service used in this case, we conclude that venue was proper either in White County or in the county in which Adams utilized the online chat service.[28]

*Judgment affirmed. Miller, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 15, 2011 — 

*Jennifer A. Trieshmann*, for appellant.
*N. Stanley Gunter, District Attorney, Jeremy D. Clough, Assistant District Attorney*, for appellee.

---

[28] See *Selfe v. State*, 290 Ga. App. 857, 861-862 (2) (660 SE2d 727) (2008) (in a case in which the State alleged a violation of the Computer or Electronic Pornography and Child Exploitation Prevention Act ("CPCEA") and obscene Internet contact, both of which involved the use of online services, venue was proper in the county where the alleged victim was located during the online contact with the defendant); *Patel v. State*, 282 Ga. 412, 415-416 (3) (651 SE2d 55) (2007) (venue in a case involving a violation of the CPCEA, which focuses on utilization of an online or Internet service, is properly laid in either the county where the accused transmitted the obscene images and solicitations or the county where the alleged victim received the online contact). See also *Rogers v. State*, 298 Ga. App. 895, 898 (3) (c) (681 SE2d 693) (2009) (in case alleging the use of a telephone to facilitate the commission of a felony, the offense was " 'committed' for venue purposes" both in the county in which the call was made and county where the call was received).