**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 16, 2014**

# In the Court of Appeals of Georgia

A14A0535. WRIGHT v. THE STATE.

ANDREWS, Presiding Judge.

Janine Wright appeals after a jury found her guilty of Medicaid fraud. She claims that the trial court erred by instructing the jury that it could convict her of the crime in a manner not charged in the indictment. After reviewing the record, we conclude that there was no error and affirm.

The evidence at trial was that Wright, a speech pathologist, had billed Medicaid for services to a patient that she had never seen or treated. This triggered an investigation of Wright and her billing practices. A Medicaid fraud investigator testified that when he asked Wright about discrepancies in her billing records, she said that she was trying to be "creative" in her billing because she had to make up for lost revenue. Accordingly, she billed for missed appointments and anticipated missed

appointments. Wright also told the investigator that she "prebilled" before the appointment date, but if the patient missed the appointment, she would reverse the claim. Only one reversal, however, showed up in Wright's records.

The State introduced evidence of 15 recipients for whom Wright billed Medicaid $60,119.57. The State called some of these recipients and introduced evidence that they: saw Wright four times and she billed for 41 visits; saw Wright three times and Wright billed Medicaid for 60 visits; saw Wright twice and she billed for 26 visits; saw Wright once and she billed for 78 visits; and saw Wright three or four times and she billed for 100 visits.

Wright testified at trial and admitted to billing Medicaid for services that were not performed. She stated that she did it after a program had been initiated for therapy and to secure the recipients' "access to the program." She stated that she intended to provide those services and it was not her intent to violate Medicaid policies and procedures when she submitted the bills.

Wright now appeals her conviction, arguing that the indictment charged her with Medicaid Fraud in violation of OCGA § 49-4-146.1 (b) (1), in that she obtained and attempted to obtain medical assistance payments to which she was not entitled

2

by engaging in a "fraudulent scheme and device." In its charge to the jury, however, the court defined Medicaid fraud as follows:

> It shall be unlawful for any person or provider to obtain or attempt to obtain for herself or any other person any medical assistance payments under the Georgia Medicaid program, or under a managed care program operated, funded, or reimbursed by the Georgia Medicaid program, to which the person or provider is not entitled, or in an amount greater than that to which the person or provider is entitled, when the medical assistance payment is obtained or attempted to be obtained by knowingly and willfully making a false statement or false representation, deliberate concealment of any material fact, or any fraudulent scheme or device.

Wright contends that the jury should only have been charged on "fraudulent scheme or device" because that was the charge in the indictment and it required the jury to conclude that she had a criminal intent when she billed for services that were not provided. Wright argues that because she admitted to billing for services that were not performed, the jury could have convicted her of knowingly making a false statement or misrepresentation without finding that she had the requisite intent of obtaining payments through a fraudulent scheme or device.

> As a general rule, it is not error to charge an entire Code section even though part of the section may be inapplicable. But, when the indictment

3

specifies the commission of a crime by only one of several methods possible under the statute, it may be reversible error to charge the entire Code section if a reasonable possibility exists that the jury may convict the defendant of committing the crime in a manner not alleged in the indictment. Jury instructions must be read and considered as a whole however; and, when an entire statutory definition is given, we will not find error if the instructions sufficiently limit the jury's consideration to the elements of the offense as charged in the indictment. *Stephens v. State,* 255 Ga. App. 680, 684 (569 SE2d 250) (2002) (citations omitted).

Here, the court read the indictment to the jury; instructed them that the State had the burden to prove every material allegation alleged in the indictment beyond a reasonable doubt; that they could only convict if they found the defendant guilty of the crimes "as charged;" and a copy of the indictment was sent out with the jury. Because the trial court properly limited the elements of the crime to that charged in the indictment, there was no error. *Stephens*, supra; *Tiller v. State*, 314 Ga. App. 472 (724 SE2d 397) (2012); *Smith v. State*, 313 Ga. App. 170, 175-176 (721 SE2d 165) (2011).

Nevertheless, Wright urges us to consider what she claims is a conflict in our case law, citing the holdings in *Smith v. State*, 313 Ga. App. 170 (721 SE2d 165) (2011) (*Smith I*) and *Smith v. State*, 310 Ga. App. 418 (714 SE2d 51) (2011) (*Smith*

4

*II*). In *Smith I*, the appellant contended "that the trial court's jury instruction erroneously authorized the jury to find him guilty of committing battery by intentionally causing substantial physical harm, while the indictment specifically alleged that he committed battery by the alternate method of causing visible bodily harm." 313 Ga. App. at 175. This Court noted that the trial court "read the indictment to the jurors and instructed that the state had the burden of proving every material allegation of each count and every essential element of the crimes charged beyond a reasonable doubt." Id. at 176. Because this constituted a limiting instruction which informed the jury that the state had the burden to prove that the appellant committed battery by intentionally causing visible bodily harm, as alleged in the indictment, it cured any alleged due process violation with the battery charge. Id.

Smith II is not in conflict with *Smith I* but rather is distinguishable on its facts. In *Smith II*, the trial court generally charged the jury that "a person commits the offense of child molestation when that person does an immoral and indecent act to a child less than 16 years of age with the intent to arouse and satisfy the sexual desires of the person and the child." 310 Ga. App. at 420-421 (1) (punctuation omitted). The indictment, however, specifically alleged that the appellant committed child molestation by placing his penis in the victim's vagina. Id. at 420 (1). Although the

trial court read the indictment to the jury and charged the jury on the state's burden of proving the material allegations in the indictment, the trial court was confronted with evidence of jury confusion when the jury sent a note to the trial court during deliberations asking whether a sexual conversation could constitute an indecent act. Id. at 421 (1). The trial court responded: "You'll have to refer to the charge as a whole and the indictment and the evidence." Id. (footnote and punctuation omitted). The Court concluded that when the jury expressed its confusion, "the trial court should have instructed the jury to limit its consideration to determining whether Smith was guilty of committing child molestation in the specific manner alleged in the indictment only." Id. at 422 (1).

In this case, unlike in *Smith II*, the jury did not express confusion regarding the crime charged in the indictment. This case resembles *Smith I* and, consistent with our opinion in that case, we conclude that Wright has not established that the jury instruction on the definition of Medicaid fraud violated her due process rights.

*Judgment affirmed. McFadden and Ray, JJ., concur.*