## A09A0474. HARGROVE v. THE STATE.
### (681 SE2d 707)

PHIPPS, Judge.

Daniel Hargrove was tried by a jury and convicted of kidnapping with bodily injury, family violence aggravated battery and two counts of family violence aggravated assault. On appeal, he claims that the evidence was insufficient to support his kidnapping conviction and that the trial judge erred in failing to sua sponte recuse himself when the victim, Sabine Payton, indicated that the judge had been involved when she obtained a temporary protective order. Finding the evidence insufficient to establish the asportation element of kidnapping, we reverse Hargrove's conviction for that offense. We find no error in the trial judge's failure to recuse himself and therefore affirm Hargrove's remaining convictions.

On appeal from a criminal conviction, we view the

---

evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

The evidence showed that Hargrove and Payton had dated for approximately two years and were living together in July 2006. On July 12, Payton was not working, and Hargrove told her that he was going to use her car. Hargrove left and then returned, "stomping up the stairs" to the house. Hargrove charged into the house, waving a business card in Payton's face that he said he obtained from the armrest in her car, and calling her obscene names. He asked her who had given her the card and then punched her in the face. Hargrove continued screaming at Payton and reminded her that he had told her he would kill her if she ever cheated on him. Hargrove grabbed Payton's cellular phone and attempted to determine whether she had called the number on the business card. Payton tried to help him with the phone, which he threw across the room. He then pushed Payton down and began stomping on her and punching and kicking her all over her body with his steel-toed shoes. Payton crawled to an ottoman as Hargrove went into the kitchen and returned with a sword, which he used to cut her on her stomach, breast and wrist. He told her he was going to cut off her head with the sword. After returning to the kitchen, Hargrove came back with a hammer and hit Payton in the head, legs and pubic area with it. He also hit her in the head with the house telephone.

Hargrove then dragged her into the bathroom by her arm and her hair. Still hitting Payton with the hammer, he told her he intended to put her in the bathtub and cut her head off. Payton testified that Hargrove was angry about the blood on the furniture and the carpet and wanted her to go into the bathtub so that "with all the blood, I wouldn't mess up the house." Hargrove then paused in his beating of Payton, picked up his cellular phone and told Payton that he needed to "call work and tell them he is late" so he would have time to "do a good job of what he was about to do." He put down the hammer to use the bathroom. Payton took that opportunity to escape with her cellular phone. She called 911 as she was leaving the house and then hid under her neighbor's porch to wait for help. When the officers arrived, they found Payton under the porch.

1. Hargrove claims that the evidence was insufficient to show

---

[1] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citations omitted).

the asportation element of the kidnapping charge under the standard set forth in *Garza v. State*.[2]

"A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[3] To prove abduction or stealing away, the state must prove the element of asportation,[4] which the Supreme Court of Georgia recently re-defined in *Garza*. Under the new definition, a finding of asportation requires an assessment of the following four factors:

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[5]

The Supreme Court explained that

[a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.[6]

In *Henderson v. State*,[7] the Supreme Court applied its recently-adopted standard and found the element of asportation was established even though it only involved movement within a duplex.[8] In that case, Henderson and two other men robbed occupants of a duplex at gunpoint, ordered them into another room in the duplex and told them to get on the floor and remove their clothes. While in that room, one of the gunmen hit an occupant in the head with a gun. The gunmen fled, and the victims went to a neighboring house to call

---

[2] 284 Ga. 696 (670 SE2d 73) (2008).

[3] OCGA § 16-5-40 (a).

[4] *Garza*, supra at 697 (1).

[5] Id. at 702 (1) (citation and footnote omitted).

[6] Id. (citation omitted). The legislature subsequently amended the kidnapping statute, OCGA § 16-5-40, effective July 1, 2009, but because that is a substantive change to the law, it has no retroactive effect here.

[7] 285 Ga. 240 (675 SE2d 28) (2009).

[8] Id. at 245 (5).

police. Considering the factors set forth in *Garza*, the Court in *Henderson* determined that

> the movement of the victims from one room to another within the duplex was of minimal duration. However, such movement was not an inherent part of the armed robbery; in fact, it occurred after the offense of armed robbery had been completed. Moreover, it created an additional danger to the victims by enhancing the control of the gunmen over them.[9]

Here, the movement of Payton from one room to another was of minimal duration, and it occurred during the assault and battery inflicted by Hargrove and in furtherance of those offenses. The movement itself did not present a significant danger to Payton independent of the danger she already faced as a victim of Hargrove's violent crimes. Unlike the robbers in *Henderson*, Hargrove had not completed his attack before he moved Payton to the bathroom. The movement of Payton was a criminologically insignificant circumstance attendant to the family violence aggravated assault with a hammer. He continued beating her with the hammer until he paused to use his cellular phone and the bathroom simultaneously. Thus, analyzed under the factors set forth in *Garza*, the asportation element was not established, and Hargrove's kidnapping conviction must be reversed.[10]

2. Hargrove claims that the trial judge erred in failing to recuse himself when Payton referred to the judge by name in connection with a temporary protective order she obtained against Hargrove. He argues that the failure violated his right to a fair trial by an unbiased jury and violated OCGA § 15-1-8 (a) (3), which provides that "[n]o judge . . . shall . . . [s]it in any case or proceeding . . . in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all parties in interest."

The issue arose during Payton's cross-examination, as Hargrove's counsel questioned her at length about a petition for temporary protective order she had completed. Payton was explaining that she had paid for the cars and the furniture in the house she shared with Hargrove and that proof of that payment "was handed to Judge Bagley that day when the protective order was wrote out." At that point, the trial court excused the jury and expressed his concern that if the protective order were admitted, the jury would know that he

---

[9] Id. (citation omitted).
[10] See *Garza*, supra, at 704 (3).

had made findings of fact related to that order. Hargrove's counsel stated that the defense had no objection. The order was never admitted; only the petition for protective order that did not contain the judge's name. Further, the trial judge instructed Payton not to refer to the temporary protective order or to the fact that he had made any type of ruling in the case.

Motions for recusal are governed by Uniform Superior Court Rule (USCR) 25. Under USCR 25.1, all motions to recuse or disqualify a judge must be timely filed in writing and all evidence shall be presented by accompanying affidavits that fully set out the facts upon which the motion is founded. Hargrove never filed a motion for recusal, but instead claims that the trial judge should have sua sponte recused himself.

"[T]here is no duty for a trial judge to sua sponte recuse himself absent a violation of a specific standard of OCGA § 15-1-8 or Canon 3 (E) (1) (a) through (c) of the Code of Judicial Conduct, which is not waived by a party after disclosure."[11] Here, the trial judge did not violate OCGA § 15-1-8 (a) (3), as claimed by Hargrove, because the temporary restraining order he issued was not the subject of review at Hargrove's criminal trial. The fact that the trial court granted a temporary restraining order against Hargrove was not alone sufficient to require a sua sponte recusal.[12]

To the extent that Hargrove alleges a violation of the Code of Judicial Conduct, we note that Canon 3 (E) (1) states that judges shall disqualify themselves in any proceeding where their impartiality might reasonably be questioned. The phrase "impartiality might reasonably be questioned" has been interpreted to mean the

> existence of a reasonable perception of lack of impartiality by the judge, held by a fair minded and impartial person based upon objective fact or reasonable inference; it is not based upon the perception of either interested parties or their lawyer-advocates. A trial judge's failure to sua sponte recuse [himself] will warrant reversal only where the conduct or remark of the judge constitutes an egregious violation of a specific ethical standard, and it must support the inescapable conclusion that a reasonable person would

---

[11] *Phillips v. State*, 267 Ga. App. 733, 736 (2) (601 SE2d 147) (2004) (citations omitted).

[12] See id. (recusal not required where trial judge previously heard same evidence at probation revocation hearing); *Baptiste v. State*, 229 Ga. App. 691, 697 (1) (494 SE2d 530) (1997) ("The fact that the judge has sat on prior cases of the party or ruled on prior matters in the case before the judge is legally insufficient as a ground[ ] for recusal.") (citations omitted).

consider the judge to harbor a bias that affects his ability to be impartial.[13]

Hargrove has failed to point to any conduct or remark by the trial court that would meet this standard, and from our examination of the record, we find none. This claim lacks merit.[14]

*Judgment affirmed in part and reversed in part. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 13, 2009.

*Mary Erickson*, for appellant.
*Penny A. Penn*, District Attorney, *Sandra A. Partridge*, Assistant District Attorney, for appellee.

---

[13] *Lemming v. State*, 292 Ga. App. 138, 141 (1) (663 SE2d 375) (2008) (citations and punctuation omitted).

[14] See *Phillips*, supra.