## A11A0126. THOMAS v. THE STATE.
### (714 SE2d 37)

ADAMS, Judge.

Chris Thomas was convicted by a jury of kidnapping, armed robbery, four counts of aggravated assault and two counts of aggravated battery. He appeals following the denial of his motion for new trial, contending that the evidence was insufficient, that the trial court improperly charged the jury, that his custodial statement should not have been admitted, that certain of his convictions should have been merged for sentencing, and that he should not have been sentenced as a recidivist.

Construed to support the jury's verdict, the evidence adduced at trial showed that Pastor Ralph E. Davis operated a gospel music radio station in Effingham County. Davis testified that on December 4, 2006, he had just finished a live broadcast when someone came up from behind and put an arm around his neck, placing him in a "death" choke. Davis said at first he thought someone was playing a joke, and he said "I give up, you win." Davis testified that as he remained in the choke hold, another person threw bleach into his eyes; however, because of the angle from which it was thrown, he was blinded only in his right eye.

At that point, he started to fight back. He planted his feet and shot straight back at the person who had him in the choke hold and a struggle ensued. As he continued to struggle on the floor, one of the assailants tried to get duct tape around his eyes. As the struggle continued, he and his assailants moved about seven to ten feet across the floor and just slightly outside of the studio room before he was subdued and taken back into the studio room. Davis was placed in a

fetal position and duct tape wound multiple times around his eyes. Duct tape was also placed across his mouth and ankles. His wrists were bound with duct tape and a cord.

Davis's assailants then proceeded to "torture" him for the next several hours. At various points Davis had plastic bags placed over his head to suffocate him, he was beat in the head with a hammer until he was unconscious and a cord was wrapped around his head. Davis raised his arms for protection while he was being hit with the hammer, causing broken bones and severe injuries to his hands, severing the end of one finger and breaking others; one of his fingers was so mangled that at the time of trial Davis only had about 15 percent use of that finger. At some point Davis's right hand was sliced with a sharp object and then the blade of the object was pushed against his jugular vein, but the blade broke. Davis testified that at various points, his assailants also said they were going to kill him. Davis further testified that his assailants took his wallet, money and car keys. They also kept asking him where the transmitter for the station was located.

Davis testified that his attackers left after several hours and he eventually was able to partially free himself. He was able to locate a cell phone but had not yet called for help when he saw a man, later identified as Eugene Howard,[1] walk by the window. Davis said Howard had been in the station several days earlier, asking him to pray for his mother. Davis noticed that Howard had his keys in his hand, which Davis recognized because of a device he had put on the key ring to attach it to his belt loop. Howard came back inside the studio, but made a hasty retreat when Davis, who was holding the cell phone in his hand, told Howard that he had dialed 911 and the police were on their way.

Howard had provided an address for his mother when he talked to Davis about praying for her, and after police learned that Howard also lived there they obtained a warrant to search the residence. Davis had told police that one of his attackers was wearing a pair of brown coveralls, and a pair of brown Carhartt coveralls, which appeared to have bleach and blood on them, were found during the search of Howard's room. Officers also found a notebook which gave details about taking over the radio station and changing the format to "urban." The garbage outside the residence was also searched, and officers found a glove with a raised dot pattern that matched prints obtained from the scene; the glove was "saturated" in what DNA testing later identified as Davis's blood. Davis's wallet and keys, as

---

[1] Howard was also charged with various crimes arising out of the events of that day, but he was tried separately from Thomas.

well as shoes that matched an impression that was found on top of one of the desks in the radio station were also found in the garbage can.

Eric Riner, one of the investigators on the case, testified that the name "Chris" kept coming up during the investigation, and a few days into the investigation the sheriff's office received a "tip" from a man who said that Chris Thomas and Howard had asked him to take them to South Carolina because the "feds were after them." Thomas and Howard were subsequently located at Thomas's address, and they were transported separately to the Bulloch County jail. Subsequently, Davis's driver's license, social security card, and a credit card were found under the seat and headrest of the patrol car used to transport Thomas to the jail.

Thomas gave several varying statements to police while he was at the Bulloch County jail; these statements were not recorded. The next day, both Howard and Thomas were transported to the Effingham County jail. While he was being photographed at the jail, Thomas indicated to Investigator Riner that he wanted to make a statement, and after being reminded of his *Miranda* rights that had been read to him the day before, he agreed that he was making the statement freely and voluntarily and that he in fact initiated making the statement. During his statement, which was recorded and played for the jury without objection, Thomas admitted to being at the radio station with Howard but said he left during the assault. However, Riner testified that Thomas's statement that he was not present during the beating was inconsistent with other evidence revealed during the investigation, including GPS coordinates obtained from the miniature tracking device Thomas had to wear as a condition of his parole. Moreover, Riner testified that given their relative sizes, it was "ludicrous" to think that Howard, who was "a very small individual" would have been able to overpower the larger Davis by himself.

Riner also testified that Thomas's girlfriend, who lived with him at the residence where he was arrested along with Howard, contacted police and turned over a plastic garbage bag containing weightlifting gloves that matched the description of gloves that Thomas told police that Howard had been wearing. Riner pointed out for the jury that if what Thomas said was true, then Thomas must have been wearing the gardening gloves with blood on them that were found in the garbage can at Howard's residence. The bag also contained a ski mask; and Davis had been able to see that the taller of the two assailants had on a burgundy ski mask, and Riner testified that Thomas was taller than Howard.

Based on this and other evidence presented at trial, the jury convicted Thomas of all the charges against him, and the trial court sentenced him on all counts. As more fully set forth below, we agree with Thomas that his conviction for kidnapping must be reversed,

and that the trial court erred in imposing his sentence, but we otherwise affirm.

1. Thomas first argues that the evidence, excluding his arguably inculpatory and arguably contradictory custodial statements that he contends should not have been admitted at trial, was insufficient to show that he "was an active participant in the assault on [the victim]." We disagree. First, as more fully set forth in Division 4 below, Thomas's statements were properly considered by the jury. Moreover, even if this evidence had been excluded, the other evidence, viewed in the light most favorable to the jury's verdict, showed that Davis was attacked by not one but two people, and that Thomas was one of the perpetrators. Moreover, even if Howard alone committed some of the acts of physical violence against Davis, the evidence was nevertheless sufficient to authorize Thomas's conviction as a party to these crimes. This enumeration thus affords no basis for reversal of Thomas's conviction for aggravated assault.

2. Thomas next argues that the evidence presented at trial on the kidnapping charge was insufficient to satisfy the element of asportation under the test enunciated in *Garza v. State*, 284 Ga. 696, 701-702 (1) (670 SE2d 73) (2008). With this contention we agree.

First we note that the crimes occurred on December 4, 2006, and Thomas's trial commenced on October 15, 2007; thus *Garza* applies here.[2]

Applying the test enunciated in *Garza,* adopted from *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 16 V. I. 614 (3d Cir. 1979), we look at four factors to determine the sufficiency of the evidence of asportation in kidnapping cases. Those four factors are:

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, 284 Ga. at 702.

"The test was designed to determine whether the movement was one 'serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.' *Garza*, 284 Ga. at 702 (1)." *Wright v. State*, 300 Ga. App. 32, 34 (1) (684 SE2d 102) (2009).

In this case, the movement occurred after the assault on Davis

---

[2] The legislature's post-*Garza* amendment to the kidnapping statute, OCGA § 16-5-40, applies to crimes committed on or after July 1, 2009.

had begun when Davis attempted to fight back against his attackers, and his attackers were struggling to re-gain control over him and subdue him. Although during this struggle he and his attackers traveled across the studio floor and partially entered the adjacent room, as soon as he was subdued and bound, he was returned to the studio room where the assault on his person continued. These circumstances show that the movement was of short or minimal duration, clearly occurring during the course and incidental to the assaults. Moreover, although the State argues that the danger to Davis was increased by this movement since it took him out of view if someone might have happened to look into the window located in the studio room, this argument ignores that Davis was moved back into that room as soon as he was subdued. Thus, we cannot say that the movement served to "substantially isolate" Davis from protection or rescue; rather, it appears to us that it was merely a "criminologically insignificant circumstance" attendant to the assaults being committed against him. *Garza*, 284 Ga. at 702. Thus we agree with Thomas that the movement here did not constitute asportation under the applicable test as enunciated in *Garza*, and his conviction for kidnapping must be reversed. E.g., *Garza*, 284 Ga. at 703-704 (2) (asportation not shown where victim fell to floor after defendant hit her in head with a gun and then defendant helped her up and made her sit in a chair as these acts were in the course of and incidental to the false imprisonment and aggravated assault); *Hargrove v. State*, 299 Ga. App. 27, 29-30 (1) (681 SE2d 707) (2009) (crimes were ongoing when victim was moved from one room to another and movement was in furtherance of those offenses); *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849) (2008) (although one of the victims was dragged around and into another room, movement was in furtherance of the robbery). Compare *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (though movement from one room to another was of minimal duration, such movement was not an inherent part of the armed robbery and created additional danger to the victims); *Walker v. State*, 305 Ga. App. 607 (699 SE2d 902) (2010) (victims forced at gunpoint into back area, where they were bound and shut in a confined space where they could not be seen from the front office); *Dixon v. State*, 303 Ga. App. 517, 519 (1) (693 SE2d 900) (2010) (movement occurred prior to assault and rape, was not an inherent part of either of those offenses, and presented a significant, independent danger to the victim).

3. In a related enumeration, Thomas contends that the trial court improperly instructed the jury that only slight movement was required to satisfy the asportation element on the kidnapping charge, which was consistent with the law at the time he was tried.

However, because we have found the evidence of kidnapping to be insufficient and reversed Thomas's conviction for that offense, it is unnecessary for us to consider this enumeration. See *Hammond v. State*, 289 Ga. 142, 144 (2) (710 SE2d 124) (2011) (holding that the accused is entitled to a jury instruction according to the *Garza* rule on asportation). Likewise, it is unnecessary for us to consider Thomas's fourth enumeration of error, which also assigns error to the court's charge on kidnapping, specifically that the trial court erred "by improperly blurring the distinction between kidnapping and kidnapping with bodily injury."

4. Thomas also complains about the admission of his in-custody statements, arguing that the State presented insufficient evidence from which the jury could determine that Thomas was fully informed of his *Miranda* rights. However, as discussed in Division 1, the record shows that only one statement Thomas made while in custody was recorded and admitted into evidence at trial. As to that statement, Investigator Riner testified that after Thomas initiated the interview, he, Riner, reminded Thomas that he had been advised of his rights the night before and that those rights still applied, and he asked Thomas if he remembered those rights. Riner testified that Thomas indicated that he did and that he agreed with the assessment that his statement was being made freely and voluntarily. He agreed that he, not the officer, had initiated the interview. Under these circumstances, we find no merit to the contention that the statement was improperly admitted. *Collins v. State*, 267 Ga. App. 784, 786-787 (3), (4) (600 SE2d 802) (2004).

5. Thomas next contends that his convictions should have been merged for sentencing, arguing that the aggravated assault and aggravated battery charges should merge with each other and then with his convictions for armed robbery and kidnapping, because these charges "are faceted expressions of a singular event, the attack upon the person of . . . Davis, who during the course of this one assault, was robbed." Since we have reversed Thomas's conviction on the kidnapping charge (Count 1), we will consider only whether the remaining offenses should be merged.

First we turn to whether the four aggravated assault charges should be merged. Count 3 of the indictment charged Thomas with aggravated assault with a deadly weapon, to wit, a knife, box cutter or other sharp-edged instrument which was used to slash Davis's neck. Count 4 of the indictment charged Thomas with aggravated assault by assaulting Davis "with an object, device or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury to wit: a hammer by repeatedly striking his hand with said hammer. . . ." Count 7 charged that Thomas committed aggravated assault with intent to murder with a

knife, box cutter or other sharp-edged instrument by slashing Davis's neck and Count 8 charged that Thomas committed aggravated assault with intent to commit murder by wrapping an electrical cord around Davis's neck to deprive him of oxygen.

"Georgia law prohibits multiple convictions if '(o)ne crime is included in the other.' OCGA § 16-1-7 (a) (1)." *Goss v. State*, 289 Ga. App. 734, 738 (3) (658 SE2d 168) (2008). Under the express terms of that statute, however, "(t)he rule prohibiting more than one conviction if one crime is included in the other does not apply unless 'the same conduct' of the accused establishes the commission of multiple crimes." *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007).

*Ledford v. State*, 289 Ga. 70, 71 (1) (709 SE2d 239) (2011).

The counts of the indictment requiring the State to prove that Thomas slashed the victim's neck with a sharp-edged instrument, hit him with a hammer and wrapped a cord around his neck with the intent to murder were based on different conduct, and merger of those convictions is not required. *Rouse v. State*, 295 Ga. App. 61, 63-64 (1) (670 SE2d 869) (2008). However, a different result obtains with respect to Counts 3 and 7, both of which allege that Thomas committed aggravated assault by slashing Davis's neck. Although Count 3 alleges that the assault was done with a deadly weapon and Count 7 alleges it was done with the intent to commit murder, see OCGA § 16-5-21 (a) (1) and (a) (2), these counts were clearly based on a single act since the razor or knife used in that assault broke while it was pressed against Davis's neck. Thus these counts merely charged the same act of aggravated assault being committed in two of the multiple ways set out in OCGA § 16-5-21. As we explained in *Gonzales v. State*, 298 Ga. App. 821 (681 SE2d 248) (2009), "[t]his punishes twice the same conduct against the same victim and is akin to charging a defendant with redundant crimes based on a single attack." Id. at 823. Thus, we agree with Thomas that Count 3 and Count 7 should be merged for sentencing.

We turn next to the aggravated battery counts. In order to prove Count 5 of the indictment, the State had to show that Thomas threw bleach in Davis's eyes and in order to prove Count 6 of the indictment, the State had to prove that Davis's finger was rendered useless because it was repeatedly struck with a hammer. Clearly, these counts were predicated on different conduct, and merger is not required. *Ledford*, 289 Ga. at 71 (1).

However, both the aggravated battery charged in Count 6 and the aggravated assault charged in Count 4 were based on the same

conduct of hitting Davis with a hammer, resulting in serious bodily injury to his hand (Count 4) and one of his fingers being rendered useless (Count 6) when he placed his hands up in an attempt to protect his head. *Generally,*

> [i]f the same conduct establish[es] the commission of both offenses, it is . . . necessary to take the next step in the analysis by applying the "required evidence" test (as adopted in *Drinkard [v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006),] pursuant to OCGA §§ 16-1-6 (1), 16-1-7 (a) (1)) for determining when one offense is included in another: "(A) single act may constitute an offense which violates more than one statute, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. . . ." *Linson v. State,* 287 Ga. 881, 885 (4) (700 SE2d 394) (2010).

(Punctuation omitted.) *Ledford,* 289 Ga. at 72 (1). *Allen v. State,* 302 Ga. App. 190, 193 (3) (690 SE2d 492) (2010). See also *Gonzales,* 298 Ga. App. at 823 (explaining when the required evidence test is used to determine if the same conduct may be punished under different criminal statutes).

Applying this test to the circumstances here, we find that the aggravated assault as charged in Count 4[3] was a lesser included offense of the aggravated battery that was charged in Count 6.[4] Although the aggravated battery required proof that the aggravated assault did not, i.e., that Thomas maliciously caused bodily harm to Davis by rendering his finger useless, we cannot say, as charged in this case, that the aggravated assault required proof of any fact that was not also required to prove the aggravated battery. *Allen v. State,* 302 Ga. App. at 193-195 (3), and cites.

Moreover, as our Supreme Court recently explained in *Ledford,* even if merger is not required under the required evidence test,

> [t]here are additional statutory provisions concerning prohibitions against multiple convictions for closely related

---

[3] Pursuant to OCGA § 16-5-21 (a) (2) "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

[4] Pursuant to OCGA § 16-5-24 (a) "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, [or] by rendering a member of his or her body useless. . . ."

> offenses. . . . These provisions include . . . OCGA § 16-1-6 (2) (one crime is included in the other where it differs only in that it involves a "less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability")[.] These other statutory provisions resolve potential gaps in the *Blockburger* (*v. United States*, 284 U. S. 299 (52 SC 180, 76 LE 306) (1932)) "required evidence" analysis which otherwise might support multiple convictions for closely related offenses where multiple convictions are unwarranted. (Cits.)

*Ledford*, 289 Ga. at 73 (1).

In this case, the aggravated assault as charged required proof of a less serious injury than the aggravated battery as charged. Thus pretermitting whether these two offenses meet the "required evidence" test, merger of these convictions is required on this basis also.

We now turn to whether merger is required of the armed robbery and aggravated assault convictions. As our Supreme Court has explained, aggravated assault is not a lesser included offense of armed robbery as a matter of law, and the two crimes rarely merge as a matter of fact. *Henderson*, 285 Ga. at 244 (4). First we note that the armed robbery as charged in this indictment required proof of intent to rob and that Davis's wallet was taken, while the aggravated assaults required proof that Davis's neck was slashed with a sharp weapon; therefore each of those crimes required proof of conduct that the other did not, and merger was not required. *Davis v. State*, 281 Ga. 871, 873 (2) (644 SE2d 113) (2007). Further, although the armed robbery was committed with the same weapon as the aggravated assaults charged in Counts 3 and 7, it is certainly not clear that the robbery occurred while Davis's neck was being slashed; indeed the same sharp weapon was also used to slash Davis's hand before it was placed against his neck, and it is unclear based on the transcript when in the sequence of events his wallet was taken. Compare *Taylor v. State*, 304 Ga. App. 395, 397-399 (1) (696 SE2d 686) (2010) (merger required when same act of assault used to establish aggravated assault and armed robbery); see also *Long v. State*, 287 Ga. 886, 888 (2) (700 SE2d 399) (2010); *Lucky v. State*, 286 Ga. 478, 482 (2) (689 SE2d 825) (2010) (merger required for armed robbery and aggravated assault with intent to rob convictions).

6. Lastly, Thomas argues that the trial court erred by imposing a recidivist sentence because the State failed to tender certified copies of the three prior felony convictions on which the recidivist sentence was based. The transcript shows and the State concedes that no certified copies of Thomas's previous convictions were tendered into evidence at sentencing, and the transcript further

shows that the prosecutor merely stated at the sentencing hearing that the State had filed a recidivist notice and that Thomas had three prior felonies.

"The burden is on the state to produce competent evidence of a prior conviction for purposes of sentencing." *Brinkley v. State*, 301 Ga. App. 827, 830 (2) (689 SE2d 116) (2009). Although the State is not necessarily confined to proving the prior conviction by introduction of a certified copy of the prior conviction, id., it is also true that "a trial court cannot rely upon the hearsay statement of a prosecutor to establish a fact for purposes of sentencing." Id. at 831. And, we have previously held that "the prosecutor's statement concerning a prior conviction was not admissible to prove the prior conviction." *Ramsey v. State*, 218 Ga. App. 692, 693 (4) (462 SE2d 806) (1995).

Moreover, although the fact that Thomas was sentenced as a recidivist does not appear on the face of the sentencing sheet, the trial judge did indicate that he was following the State's recommendation in sentencing Thomas, and that recommendation included that Thomas be sentenced as a recidivist. *Ramsey*, 218 Ga. App. at 693 (4) (trial court's comments show that prosecutor's comments on prior conviction were considered in arriving at defendant's sentence). Thus, the sentence must be vacated, and the case remanded for resentencing. We note, however, that the State is not prohibited on double jeopardy grounds from introducing competent evidence of the prior convictions on remand. *Brinkley*, 301 Ga. App. at 831 (2).

*Judgment of conviction affirmed in part and reversed in part, sentence vacated and case remanded with direction for resentencing. Blackwell, J., concurs. Barnes, P. J., concurs in judgment only.*

DECIDED JULY 1, 2011.

*Peter D. Johnson*, for appellant.
*Richard A. Mallard, District Attorney, Brian A. Deal, Assistant District Attorney*, for appellee.