## A11A1405. SMITH v. THE STATE.
### (721 SE2d 165)

ANDREWS, Judge.

Jamie Barron Smith appeals from the judgment of conviction entered on jury verdicts finding him guilty of attempted rape; aggravated assault with intent to rape; aggravated assault with a knife; kidnapping; and misdemeanor battery. Smith contends that there was insufficient evidence of asportation to support the kidnapping conviction; that the trial court erred by failing to merge the aggravated assault convictions into one another and into the attempted rape conviction; and that the trial court erroneously instructed the jury with respect to the battery offense. For the reasons that follow: (1) we find the evidence of asportation was sufficient and affirm the kidnapping conviction; (2) we vacate the conviction for aggravated assault with intent to rape because it merged into the attempted rape conviction; and (3) we find no other error and affirm the remaining convictions.

1. Contrary to Smith's contention, the evidence of asportation was sufficient to support the jury's verdict finding him guilty of kidnapping.

The evidence showed that the female victim, who had her two-year-old child with her, was working alone at the front office of a storage unit rental business. Smith came into the business and rented a five-foot by ten-foot enclosed storage unit with a roll-up door. After the victim showed Smith where the unit was located, Smith parked his car near the unit and started unloading items from his car into the unit through the unit's open door. The victim briefly

stood outside the unit and watched as Smith put trash bags of items and a blue box into the unit, at which point she started to walk away from the unit and back to the office. In explanation of what happened next, the victim gave the following testimony on direct examination by the prosecutor:

Q: When did this situation become something that was not normal?

A: He put the blue box in [the unit], and as I was walking away, he got me from the back and jumped on me. . . . And I remember a couple of punches in the face and my neck from behind. And by that time, we were in the unit. . . .

Q: How far did you get from the unit before he grabbed you?

A: Apparently not very far. I just remember that all of a sudden, just, "Oh, he's hitting me." And we were already in the unit. . . .

Q: Were you standing inside the unit when you turned to leave?

A: No.

Q: You were outside the unit on the ground?

A: Yes. He jumped on me from behind and I think we fell in. Because we fell forward onto the trash bags. . . .

Q: Can you give us a better idea of where you were standing when he jumped on you?

A: I was just . . . on the outside of the door. . . .

Q: How fast would you say that this — the grabbing, hitting, falling happened?

A: I was on the floor before I realized what had happened. . . .

Q: What position was your body and his body on the floor at this time?

A: We went from facing the back [of the unit] and the trash bags to turning to where we were cross-ways in the unit. And then we turned to where my head was at the door. . . .

Q: What is the next part of that struggle?

A: When he jumped on me, he was choking me. And he told me if I screamed, he would kill me and [my child] both. . . . He said he had a knife, and he held it to my face. And then I had my eyes closed. And when I opened my eyes, I realized my head was at the door. . . . And the door was closed. . . . I remember trying to open the door. And I got the door open a little. . . . And I remember grabbing onto the outside of the door, hoping that he wouldn't pull me back in. And that way

he couldn't close the door because my hand would be in the way. And I was able to get my left hand and push the door up some more. . . .

Q: And at this point, you're laying on your stomach with him laying on top of you?

A: Right. . . .

Q: Did he at some point during this period release your neck?

A: Yes. He was at my waist.

Q: What happened, more specifically, when he released your neck?

A: He was trying to — he was piddling with my belt. . . .

Q: What other statements were made by the defendant regarding what he intended to do?

A: When he first pulled me in, he told me to take my pants off. . . .

Q: About how far did you get the door pushed up?

A: I remember just being able to push it up just a little. And the sunshine came in, and I saw the knife. And then I got my left hand free and pushed it up a little more, maybe two, two and a half feet or so. . . .

Q: Were you able to prevent being pulled back into the unit?

A: Yes. When I got the door open, I was able to crawl out from there.

At that point, the victim ran back to the office and called for help and Smith fled the scene. As a result of the struggle, the victim suffered various bruises and scratches. Based on the above evidence, the jury found Smith guilty of kidnapping, attempted rape, aggravated assault with intent to rape, aggravated assault with a knife, and battery.

Smith contends that his conviction for kidnapping should be reversed because there was insufficient evidence to prove an essential element of the offense — asportation of the victim. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such other person against his will." OCGA § 16-5-40 (a).[1] An essential element of the offense of kidnapping is the abduction or stealing away of the victim, also referred to as asportation or movement of the victim.

---

[1] The kidnapping statute was significantly revised in 2009, but the revised version, which applies only to crimes committed on or after July 1, 2009, does not apply in this case to the crimes occurring in 2005. *Goolsby v. State*, 311 Ga. App. 650 (718 SE2d 9) (2011).

*Garza v. State*, 284 Ga. 696, 697 (670 SE2d 73) (2008). In *Garza*, the Supreme Court adopted a four-factor test to differentiate movement that satisfies the asportation element from movement that is "merely a 'criminologically insignificant circumstance' attendant to some other crime." (Citation omitted.) Id. at 702; *Brown v. State*, 288 Ga. 902, 905 (708 SE2d 294) (2011).[2] The factors are:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

*Garza*, 284 Ga. at 702. Smith argues that the movement of the victim was merely an incidental or insignificant circumstance attendant to the other offenses.

The first *Garza* factor supports Smith's contention because the evidence shows that the movement of the victim from outside the storage unit to inside the unit was of brief duration. As to the second factor, although there was evidence that Smith punched the victim and committed battery during the movement, there was also evidence from which the jury could have concluded that the battery occurred inside the unit after the movement. Similarly, the evidence showed that Smith assaulted the victim and attempted to rape her inside the storage unit after the movement. As to the third factor, the movement of the victim was not an inherent part of the other offenses; it was not necessary to move the victim to attempt to rape her, assault her with a knife, or commit a battery on her. See *Brown*, 288 Ga. at 905; *Scales v. State*, 310 Ga. App. 48, 56 (712 SE2d 555) (2011). Moreover, there was evidence from which the jury could have found that all three of these offenses occurred inside the storage unit after the movement. Considering the fourth factor, the movement itself clearly presented a significant danger to the victim independent of the danger posed by any of the other offenses because Smith's obvious purpose was to conceal the victim behind the closed door of the storage unit to isolate her from protection or rescue. As noted in *Garza*, "the nature of the evil the kidnapping statute was originally intended to address [is] movement serving to substantially isolate the victim from protection or rescue. . . ." *Garza*, 284 Ga. at 702. Satisfaction of all four *Garza* factors is not required to establish that asportation has occurred under the kidnapping statute. *Hammond v.*

---

[2] The 2008 decision in *Garza* applies retroactively in this case to crimes committed and tried in 2005. *Hammond v. State*, 289 Ga. 142, 143-144 (710 SE2d 124) (2011).

174

*State*, 289 Ga. 142, 144 (710 SE2d 124) (2011). The evidence showed movement of the victim that was not merely an incidental or "criminologically insignificant circumstance" attendant to the other crimes; rather the evidence was sufficient for the jury to find that the asportation element of kidnapping was proven under the *Garza* standard beyond a reasonable doubt. *Tate v. State*, 287 Ga. 364, 366 (695 SE2d 591) (2010) (finding asportation where only two of the *Garza* factors were present).

The evidence was sufficient for the jury to find beyond a reasonable doubt that all the elements of kidnapping, attempted rape, aggravated assault with intent to rape, aggravated assault with a knife, and battery were proved beyond a reasonable doubt. OCGA §§ 16-5-40; 16-4-1; 16-6-1; 16-5-21 (a) (1); 16-5-21 (a) (2); 16-5-23.1 (a); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. We agree with Smith that, because his conviction for aggravated assault with intent to rape merged into his conviction for attempted rape, the conviction for aggravated assault with intent to rape must be vacated.

Smith's conviction for attempted rape was supported by evidence that, with the intent to commit rape by having forcible and nonconsensual carnal knowledge of the victim, he took a substantial step toward committing the rape, but failed to consummate it. *Hollis v. State*, 225 Ga. App. 370 (484 SE2d 54) (1997); see OCGA §§ 16-4-1 (criminal attempt); 16-6-1 (rape). As alleged in the indictment and shown by the evidence produced at trial, Smith took a substantial step toward committing the rape by assaulting the victim, forcing her into the storage unit, and threatening her if she did not remove her clothes. Smith's conviction for aggravated assault with intent to rape was supported by the same evidence that he assaulted the victim with the intent to rape. *Butler v. State*, 194 Ga. App. 895, 897 (392 SE2d 324) (1990); see OCGA § 16-5-21 (a) (1).

The double jeopardy clause of the Fifth Amendment to the United States Constitution prohibits multiple convictions or punishments arising from the same conduct. *Drinkard v. Walker*, 281 Ga. 211, 212 (636 SE2d 530) (2006). As set forth in OCGA § 16-1-7 (a), "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if . . . [o]ne crime is included in the other. . . ." Under OCGA § 16-1-6 (1), one crime is "included in" another crime where " '(i)t is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of (the other crime).' " *Drinkard*, 281 Ga. at 213. To determine under OCGA § 16-1-6 (1) whether convictions under two criminal provisions merge because one is included in the other, the "required

evidence" test is used to determine "whether each provision requires proof of a fact which the other does not." (Citation and punctuation omitted.) Id. at 215.

> [T]he important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

Id. at 216. Because Smith's conviction for aggravated assault with intent to rape was established by proof of the same or less than all the facts required to establish his conviction for attempted rape, the former merged into the latter under the required evidence test. By contrast, even if the same conduct established Smith's convictions for aggravated assault with a knife and attempted rape, the convictions did not merge because each offense required proof of an additional fact which the other did not. Id. at 215. Aggravated assault, but not attempted rape, required proof that Smith assaulted the victim with a knife, an object when used offensively against a person is likely to result in serious bodily injury. OCGA § 16-5-21 (a) (2). Attempted rape, but not aggravated assault with a knife, required proof of intent to commit rape. OCGA §§ 16-4-1; 16-6-1. Moreover, these two offenses are not so closely related that multiple convictions are prohibited under other provisions of OCGA §§ 16-1-6 and 16-1-7. *Waits v. State*, 282 Ga. 1, 5 (644 SE2d 127) (2007); *Drinkard*, 281 Ga. at 216, n. 32.

3. Smith contends that the trial court's jury instruction erroneously authorized the jury to find him guilty of committing battery by intentionally causing substantial physical harm while the indictment specifically alleged that he committed battery by the alternate method of causing visible bodily harm. OCGA § 16-5-23.1 (a).

> [A] due process violation may occur when an indictment charges the defendant with committing a crime in a specific manner, but the trial court instructs the jury that the crime may be committed in a different manner. If there was evidence at trial to support a conviction on the manner of committing the crime not stated in the indictment, and the trial court did not instruct the jury to limit its consideration to the manner alleged in the indictment, then the defendant's conviction must be reversed.

*Walls v. State*, 283 Ga. App. 560, 562 (642 SE2d 195) (2007). Here,

the trial court read the indictment to the jurors and instructed that the state had the burden of proving every material allegation of each count and every essential element of the crimes charged beyond a reasonable doubt. Because this constituted a limiting instruction which informed the jury that the state had the burden to prove that Smith committed battery by intentionally causing visible bodily harm, as alleged in the indictment, it cured any alleged due process violation with the battery charge. Id. at 563; *Reed v. State*, 285 Ga. 64, 65 (673 SE2d 246) (2009).

*Judgment affirmed in part and vacated in part. Mikell, C. J., Smith, P. J., Dillard and McFadden, JJ., concur. Barnes, P. J., and Phipps, P. J., concur in part and dissent in part.*

PHIPPS, Presiding Judge, concurring in part and dissenting in part.

I concur fully in Divisions 2 and 3. Because the evidence of asportation was insufficient to support Smith's kidnapping conviction, I respectfully dissent from the judgment in Division 1.

The evidence shows that on March 11, 2005 an office manager was working alone at a warehouse facility. The facility was located near a road which received light traffic. The manager testified that Smith entered the office at about 1:30 and asked her for the prices of the storage units. The manager wrote the prices on a piece of paper for Smith, and Smith left.

About an hour later, a man called the facility on the phone and asked whether there was anybody at the office who could help him unload items into a unit. Smith's name and phone number displayed on the caller I.D. device, and the manager recognized his voice from when he had come into the office. The manager told Smith that nobody was there to help him unload items and that she was there alone. At 4:30 Smith entered the office again, this time stating that he was going to rent a storage unit. The manager asked Smith for his license, filled out a contract, and received a check from Smith. Smith asked the manager to show him to the unit, which was located near the entrance gate. No other customers entered the office either during or after the transaction, which incidentally, was the only business that day.

Smith left the rental office and walked to his vehicle. He then drove through a gate and met the manager who had walked to the unit. Smith began to unload items into the unit. As the manager started to walk away, Smith grabbed her from behind and "jumped on" her. The manager "remember[ed] a couple of punches in the face and my neck from behind. And by that time, we were in the unit." When she turned to leave before Smith grabbed her, she was standing "just on the outside" of the unit, "just . . . on the outside of

the door." The manager testified that "[h]e jumped on me from behind and I think we fell in. Because we fell forward onto the trash bags." When asked how quickly the "grabbing, hitting, [and] falling happened," the manager testified that she was "on the floor before [she] realized what had happened."

The manager was struck on her head, neck and shoulder. They both fell on the floor, and they "went from facing the back . . . to turning to where we were cross-ways in the unit. And then we turned to where my head was at the door." Smith told the manager that he had a knife, and he held it to her cheek. Smith told her to remove her pants and threatened to kill her and her child (who was in an office asleep) if she screamed. Smith was on top of her.

At this point, the manager's head was next to the door, which was closed. She opened the door, saw the knife next to her head, and pushed the knife outside of the unit. Smith had released his hold on the manager's neck and began "piddling" with the belt on her waist. The manager crawled out of the unit, and as she was running she looked back and saw Smith get into his car and drive away. The manager suffered bruising on her face, neck, and shoulders, and scratches on her back.

Smith testified on his own behalf, admitting that he went to the warehouse facility more than once that day, rented a unit, and unloaded items into the unit, but denying that he attacked or attempted to rape the manager.

Smith was indicted for kidnapping in that he "did abduct . . . , a person, without lawful authority and hold this victim against her will. . . ." "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will."[3] The elements of kidnapping are: (1) an illegal holding, (2) an overmastering of the victim's will; and (3) an asportation of the victim.[4]

In *Garza v. State*,[5] the Supreme Court of Georgia adopted a four-factor test for determining whether a victim's movement constitutes the asportation necessary for kidnapping or is merely incidental to other criminal activity. The four factors are: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such

---

[3] OCGA § 16-5-40 (a) (2005). See *Widner v. State*, 280 Ga. 675, 677 (2) (631 SE2d 675) (2006) (generally, a crime is to be construed according to the provisions of the law existing at the time of its commission); see *Garza v. State*, 284 Ga. 696, 697 (1) (670 SE2d 73) (2008).

[4] *Leppla v. State*, 277 Ga. App. 804, 806 (1) (627 SE2d 794) (2006).

[5] Supra at 702 (1). See *Dixon v. State*, 300 Ga. App. 183, 184 (1), n. 3 (684 SE2d 679) (2009) ("Subsequent to *Garza*, the legislature amended the kidnapping statute; because the amendment applies to crimes committed on or after the revision's effective date of July 1, 2009, it is inapplicable here, and *Garza's* standard applies.").

movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[6]

The *Garza* factors are intended to assist Georgia prosecutors and courts in

> determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.[7]

In deriving the factors, the Supreme Court of Georgia, citing *Leppla v. State*[8] and *Woodson v. State*,[9] recognized that the "definition of asportation ha[d] evolved to the point where it seem[ed] that the only type of movement considered insufficient as evidence of asportation [was] movement immediately resulting from a physical struggle."[10] Indeed, in *Leppla* we held that a struggle which began at the driver's side door of a vehicle and ended at the rear of the vehicle was insufficient evidence of asportation.[11] In *Woodson*, the Supreme Court determined that asportation was shown because the victim "went from one room to another in response to [the defendant's] threatening command."[12] The Court noted however that the act of merely "shoving the victim, without moving her to a different location, was not the evidence that satisfied the requirement of asportation, nor was pulling her to the floor at a single location."[13]

I believe that the description of the attack in this case demonstrates that Smith and the victim struggled and fell to the ground.[14] The fall across the threshold into the storage unit, from just outside the warehouse unit to inside the unit, was of minimal duration.[15] The

---

[6] *Garza*, supra.

[7] Id.

[8] Supra.

[9] 273 Ga. 557 (544 SE2d 431) (2001).

[10] *Garza*, supra at 698 (1).

[11] *Leppla*, supra at 809-810 (1).

[12] Supra at 558.

[13] Id. (footnote omitted).

[14] See *Leppla*, supra at 810 (1).

[15] See *Ham v. State*, 303 Ga. App. 232, 237 (1) (a) (692 SE2d 828) (2010) (victim's movement from living room to bedroom was of minimal duration); *Crawford v. State*, 297 Ga. App. 187, 188, 190 (1) (b) (676 SE2d 843) (2009) (victim's movement from restaurant's oven room to cash register in another room was brief); *Brashier v. State*, 299 Ga. App. 107, 110 (2) (681 SE2d 750) (2009) (movement of victim from the middle of the basement to the front of the basement was of minimal duration).

victim testified that as she had turned to leave, she was standing just on the outside of the door and that Smith jumped on her from behind and they "fell in" the unit, onto trash bags. The movement occurred during the commission of the attempted rape, as the evidence showed that Smith was seeking to gain control of the victim.[16] Smith tried to further subdue the victim by striking her and threatening to kill her and her child if she screamed. In my opinion, this attack — grabbing, striking, and threatening her — was incidental to Smith's attempt to rape her.[17] For the same reasons, I believe the movement was also an inherent part of the other crimes charged. Given that the victim had left the rental office, which was located on an isolated road, and was at the storage unit alone with Smith, the movement itself did not significantly increase the danger to the victim independent of the danger posed by the separate offenses of attempted rape, aggravated assault, or battery.[18]

Here, I believe an assessment of all the *Garza* factors shows the movement was more accurately characterized as a criminologically insignificant circumstance attendant to the other crimes charged — attempted rape, aggravated assault, and battery. The movement was not "in the nature of the evil the kidnapping statute was originally intended to address."[19] I would therefore conclude that the evidence was insufficient for the jury to find that the asportation element, as interpreted in *Garza*, was proven in this case to support Smith's conviction for kidnapping.[20] Therefore, I would reverse Smith's conviction for kidnapping.[21]

I am authorized to state that Presiding Judge Barnes joins in this dissent.

DECIDED DECEMBER 1, 2011.

*Jimmonique R. S. Rodgers*, for appellant.

*Robert E. Brooks, Jr., District Attorney, Carmen T. Bolden, Assistant District Attorney*, for appellee.

---

[16] See generally *Thomas v. State*, 310 Ga. App. 404, 407-408 (2) (714 SE2d 37) (2011).

[17] See generally id.

[18] See *Moore v. State*, 301 Ga. App. 220, 229 (7) (687 SE2d 259) (2009) (conviction for kidnapping reversed due to lack of evidence of asporation, where the defendant forced the victim's car off the road and pulled the victim out of her car, then dragged her into a ditch on the side of a road to commit a sexual offense).

[19] *Garza*, supra at 702 (1).

[20] *Leverette v. State*, 303 Ga. App. 849 (696 SE2d 62) (2010).

[21] *Ham*, supra; *Crawford*, supra; *Leppla*, supra; *Woodson*, supra.