**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 23, 2015**

# In the Court of Appeals of Georgia

A15A1296. HOWARD v. THE STATE.                                    DO-048 C

DOYLE, Chief Judge.

Following a jury trial, Eugene Howard was convicted of kidnapping, armed robbery, four counts of aggravated assault, and two counts of aggravated battery. Howard appeals the denial of his subsequent motion for new trial, arguing that the evidence was insufficient to support his kidnapping conviction and that some of his convictions should have merged for sentencing. For the reasons that follow, we reverse his conviction for kidnapping and affirm his remaining convictions and sentence.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant

guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.[1]

So viewed, the record shows that Howard committed the crimes for which he was convicted with a co-defendant, Chris Thomas. Although Howard and Thomas were tried separately, the evidence admitted at their respective trials was essentially the same. Thus, as contained in the factual recitation in this Court's opinion in Thomas's case,

> the evidence adduced at trial showed that Pastor Ralph E. Davis operated a gospel music radio station in Effingham County. Davis testified that on December 4, 2006, he had just finished a live broadcast when someone came up from behind and put an arm around his neck, placing him in a "death" choke. . . . Davis testified that as he remained in the choke hold, another person threw bleach into his eyes; however, because of the angle from which it was thrown, he was blinded only in his right eye.
>
> At that point, [Davis] started to fight back. He planted his feet and shot straight back at the person who had him in the choke hold and a struggle ensued. As he continued to struggle on the floor, one of the assailants tried to get duct tape around his eyes. . . . [D]uct tape [was] wound

---

[1] (Punctuation omitted.) *Morales v. State*, 332 Ga. App. 794 (1) (775 SE2d 168) (2015).

2

multiple times around his eyes [and] placed across his mouth and ankles[,] and [h]is wrists were bound with duct tape and [wire].

Davis's assailants then proceeded to "torture" him for the next several hours. At various points Davis had plastic bags placed over his head to suffocate him, he was beat[en] in the head with a hammer until he was unconscious[,] and a cord was wrapped around his head. Davis raised his arms for protection while he was being hit with the hammer, causing broken bones and severe injuries to his hands, severing the end of one finger and breaking others. . . . At some point[,] Davis's right hand was sliced with a sharp object[,] and then the blade of the object was pushed against his jugular vein, but the blade broke. Davis testified that . . . his assailants also said they were going to kill him. Davis further testified that his assailants took his wallet, money and car keys. They also kept asking him where the transmitter for the station was located.

Davis testified that his attackers left after several hours[,] and he eventually was able to partially free himself. He was able to locate a cell phone but had not yet called for help when he saw a man, later identified as . . . Howard, walk by the window. Davis said Howard had been in the station several days earlier, asking him to pray for his mother. Davis noticed that Howard had [Davis's] keys in his hand, which Davis recognized because of a device he had put on the key ring to attach it to his belt loop. Howard came back inside the studio, but [fled] when Davis, who was holding the cell phone in his hand, told Howard that he had dialed 911 and the police were on their way.

Howard had provided an address for his mother when he talked to Davis about praying for her, and after police learned that Howard also lived there they obtained a warrant to search the residence. [A] pair of brown Carhartt coveralls [matching Davis's description], which appeared to have bleach and blood on them, were found during the search of Howard's room. Officers also found a notebook which gave details about taking over the radio station and changing the format to "urban." The garbage outside the residence was also searched, and officers found a glove with a raised dot pattern that matched prints obtained from the scene ; the glove was [stained with] what DNA testing later identified as Davis's blood. Davis's wallet and keys, as well as shoes that matched an impression that was found on top of one of the desks in the radio station were also found in the garbage can.[2]

At the conclusion of the trial, the jury found Howard guilty of kidnapping, armed robbery, four counts of aggravated assault, and two counts of aggravated battery. The trial court denied his subsequent motion for new trial, and this appeal followed.

---

[2] *Thomas v. State*, 310 Ga. App. 404, 404-406 (714 SE2d 37) (2011) (physical precedent only), disapproved by *Gipson v. State*, 332 Ga. App. 309, 320, n.8 (772 SE2d 402) (2015).

1. Howard argues that there was insufficient evidence to support the asportation element of his conviction for kidnapping under the test set forth in *Garza v. State*.[3] We agree.

The crimes in this case occurred in 2006, and Howard's trial was in 2007. At that time, OCGA § 16-5-40 (a) provided: "[a] person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." In *Garza*, the Supreme Court of Georgia

> overruled prior law regarding the need for only slight movement to satisfy the asportation element of kidnapping and set out four factors to determine whether the asportation element was met: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[4]

---

[3] 284 Ga. 696 (670 SE2d 73) (2008), superceded by statute as explained by *Gonzalez*, ___ Ga. ___ , ___ n.3 (Case No. S15A0884, decided Sept. 14, 2015).

[4] (Punctuation omitted.) *Hammond v. State*, 289 Ga. 142, 143 (710 SE2d 124) (2011) ("After [the Supreme Court of Georgia's] decision in Garza, the legislature amended the kidnapping statute, effective July 1, 2009. The amendment provided once again that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense.") (footnote omitted), citing *Garza*,

5

"The [*Garza*] test was designed to determine whether the movement was one 'serving to substantially isolate the victim from protection or rescue – or merely a 'criminologically insignificant circumstance' attendant to some other crime."[5]

Here, the movement occurred after Davis was grabbed by the throat from behind and he began to fight back. After Davis shot back in the chair, one of the assailants pulled him out of the chair. Davis explained that he "was trying to take both [assailants] out of the studio into the foyer[, and his] ultimate goal . . . would have been to get to the door . . . [b]ecause [it] was still unlocked." After the assailants forced Davis to the ground, he "ma[de his] move to the doorway . . . [,] and he was part-way across the doorway into the other room when" one of the men brought him to the ground.

Davis's movements during his attempt to reach the doorway and escape were not performed by the assailants, who immediately returned him to the studio room. And although the assailants bound Davis's wrists and ankles and forced him to the floor, the movement was of minimal duration, and

---

284 Ga. at 702 (1).

[5] (Punctuation omitted.) *Thomas*, 310 Ga. App. at 407 (2), quoting *Garza*, 284 Ga. at 702 (1).

we cannot say that the movement served to "substantially isolate" Davis from protection or rescue; rather, it appears to us that it was merely a "criminologically insignificant circumstance" attendant to the assaults being committed against him. Thus[,] we agree with [Howard] that the movement here did not constitute asportation under the applicable test as enunciated in *Garza,* and his conviction for kidnapping must be reversed.[6]

2. Howard contends that the trial court erred by failing to merge his convictions for (a) aggravated assault with a deadly weapon and aggravated assault with intent to murder; and (b) aggravated assault with an object likely to result in serious bodily injury and aggravated battery. We disagree.

---

[6] *Thomas*, 310 Ga. App. at 408 (2), quoting *Garza*, 284 Ga. at 702 (1). See also *Gonzalez*, ___ Ga. at ___ (no asportation because the act of pulling the victim by the hair and back from the door was of "minimal duration," "was part and parcel of one violent event," and did not "present[] a significant danger to her that was independent of the family violence battery"); *Hargrove v. State*, 299 Ga. App. 27, 29-30 (2) (681 SE2d 707) (2009) (no asportation because movement of the victim occurred in furtherance of ongoing crimes); *Rayshad v. State*, 295 Ga. App. 29, 33-34 (1) (b) (670 SE2d 849 (2008) (no asportation even though one of the victims was dragged around and into another room because the movement was in furtherance of robbery).

"Georgia law bars conviction for a crime that arises from the same criminal conduct included as a matter of fact or as a matter of law in another crime for which the defendant has been convicted."[7]

> When the same act or transaction violates two statutes, we apply the "required evidence" test adopted in *Drinkard v. Walker*,[8] to determine whether one crime is included in the other under OCGA § 16-1-6 (1). Under the required evidence test, neither offense is included in the other if each statutory provision requires proof of a fact which the other does not. Consequently, when each of two statutes requires proof of an additional fact which the other does not, an acquittal or conviction under one statute does not exempt the defendant from prosecution and punishment under the other, even though the charges are based on a single act. In applying the required evidence test, we consider the crimes as indicted and not every possible manner of committing a particular crime.[9]

Here, Count 3 charged Howard with aggravated assault with a deadly weapon, "a knife, box cutter[,] or other sharp-edged instrument . . . by slashing . . . Davis'[s]

---

[7] (Citation and punctuation omitted.) *Duncan v. State*, 290 Ga. App. 32, 33 (658 SE2d 780) (2008), disapproved on other grounds by *Thomas v. State*, 292 Ga. 429, 434 (5) (738 SE2d 571) (2013).

[8] 281 Ga. 211 (636 SE2d 530) (2006).

[9] (Citations and punctuation omitted.) *Gipson v. State*, 332 Ga. App. 309, 319 (7) (772 SE2d 402) (2015).

neck with said instrument. . . ." Count 7 charged Howard with aggravated assault "with intent to murder with a knife, box cutter[,] or other sharp[-]edged instrument, which when used offensively against a person, is likely to or actually does result in serious bodily injury, by slashing [Davis's] neck with said instrument. . . ." Count 4 charged Howard with aggravated assault with a deadly weapon, "a hammer[,] by repeatedly striking [Davis's] hand with said hammer. . . ." Count 6 charged Howard with aggravated battery by "unlawfully [and] maliciously caus[ing] bodily harm to . . . Davis by rendering . . . his finger[] useless by repeatedly striking his finger with a hammer. . . ."

(a) Under the required evidence test, Howard's two aggravated assault convictions (Counts 3 and 7) did not merge.[10] As alleged in the indictment, aggravated assault with intent to murder (Count 7) required the State to prove that

_____

[10] See *Thomas*, 292 Ga. at 434 (5) (applying the required evidence test, rather than the unit of prosecution test, in determining whether a defendant could be convicted of aggravated assault under both OCGA §§ 16-5-21 (a) (1) and (a) (2) for the same act or transaction). We note that in *Thomas*, 310 Ga. App. at 410 (5) – the appeal of Howard's co-defendant – this Court applied the unit of prosecution test and concluded that the defendant's convictions for aggravated assault with a deadly weapon and aggravated assault with intent to murder merged. As this Court explained in *Gipson*, 332 Ga. App. at 320, n.8, however, *Thomas* is physical precedent only because one of the judges concurred in the judgment only, and the application of the unit of prosecution test conflicts with the Supreme Court's decision in (unrelated) *Thomas*, 292 Ga. at 434 (5).

9

Howard intended to kill Davis, which the State was not required to prove for the charge of aggravated assault with a deadly weapon (Count 3), and aggravated assault with a deadly weapon required the State to prove that Howard used a deadly weapon, "a knife, box-cutter[,] or other sharp-edged instrument," which the State did not have to prove for the conviction of aggravated assault with intent to murder.[11] Accordingly, the trial court did not err by declining to merge Counts 3 and 7.[12]

(b) Similarly, under the required evidence test, Howard's convictions for aggravated assault (Count 4) and aggravated battery (Count 6) did not merge. As alleged in the indictment, aggravated battery required the State to prove that Howard rendered a member of Davis's body useless,[13] which the State did not have to prove for the conviction of aggravated assault with a deadly weapon. And aggravated assault with an offensive weapon required the State to prove that Howard used a hammer, an object likely to result in serious bodily injury, which the State did not

---

[11] See OCGA §§ 16-5-21 (a) (1), (2) (2007).

[12] See *Thomas*, 292 Ga. at 434 (5); *Gipson*, 332 Ga. App. at 320 (7) (b).

[13] See OCGA § 16-5-24 (a) (2007).

have to prove for the aggravated battery conviction.[14] Therefore, the trial court did not err by declining to merge Counts 4 and 6.[15]

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Boggs, J., concur.*

---

[14] See OCGA §§ 16-5-24 (a), 16-5-21 (b) (2) (2007).

[15] See *Regent v. State*, ____ Ga. App. ___, ____ (1) (774 SE2d 213) (2015) ("Since aggravated assault and aggravated battery are two separate offenses with different elements of proof, the charges do not merge, and it is irrelevant that both crimes stemmed from a single act or series of continuous acts."); *Gipson*, 332 Ga. App. at 319-320 (7) (a); *Works v. State*, 301 Ga. App. 108, 114 (6) (686 SE2d 863) (2009).